Argued and submitted January 19, reversed and remanded July 7, 1999

## BENCHMARK PROPERTIES,
*Respondent,*

*v.*

## Alan HIPOLITO
## and Lisa Hipolito,
*Appellants.*

## (97F915611; CA A101041)

984 P2d 927

Ann B. Witte argued the cause and filed the briefs for appellants.

Stephen L. Madkour argued the cause for respondent. On the brief were Andrew T. Reilly and Smith, Freed, Heald & Chock, P.C.

Before Edmonds, Presiding Judge, and Armstrong and Kistler,* Judges.

KISTLER, J.

* Kistler, J., *vice* Warren, P. J., retired.

**KISTLER, J.**

Defendants appeal from a judgment granting plaintiff possession of a rental house because of defendants' failure to pay rent and denying defendants' counterclaim for damages for habitability violations and retaliation for exercising their rights under the Residential Landlord and Tenant Act. The dispositive issue is the court's action in quashing subpoenas requiring the attendance and testimony of the Ritchies, the owners of the corporate plaintiff. We reverse and remand.

Defendants rented a house from plaintiff on October 18, 1996, for use as their residence. According to defendants, they began to notice problems with the property within a month after moving in and brought those problems to Mrs. Ritchie's attention.[1] They testified that their first complaints were verbal but that in April 1997 they gave written notice of problems with the oven, a bathroom window, and a front step. In June, they gave written notice of problems with the outside water faucets. The problems with the oven and step were resolved soon after their written complaint. On October 3, 1997, defendants gave written notice that they were withholding rent because the bathroom window had deteriorated and there were rats under the bathtub. On October 12, 1997, Leroy Ellis, who had recently begun managing the house for plaintiff, walked through the house with defendants, who showed him all of their complaints. On October 17, a city building inspector wrote plaintiff describing a number of code violations. The parties agree that all of the problems were resolved by the end of November.

In early December, plaintiff filed this action for possession, based on defendants' failure to pay rent in October and November. In their answer, defendants raised affirmative defenses and counterclaims based on retaliation and also an alleged diminution in rental value due to lack of habitability. Trial began on the morning of Monday, January 5,

---

[1] We state the evidence in accordance with defendants' testimony in order to show the possible effect on their case of their inability to compel the Ritchies to testify. We do not thereby suggest that defendants' version of the facts is correct; that is an issue for the trier of fact on remand.

1998, but other matters on the court's docket prevented completing the trial that day. Mr. and Mrs. Ritchie were not present on Monday; defendants had not subpoenaed them or otherwise sought their presence. On Wednesday morning, January 7, defendants served subpoenas on the Ritchies, requiring their attendance at the resumption of the trial, which at the time was scheduled for Friday, January 9. On Wednesday afternoon, plaintiff's attorney moved to quash the subpoenas.

At the hearing on the motion to quash, the court's primary concern was whether the Ritchies had been present on Monday and whether defendants had subpoenaed them for that day. Defendants' attorney explained why he had not subpoenaed them until later:

> "Counsel and I took depositions last week in preparation of the trial in this matter, and Counsel and Benchmark had undertaken to provide certain documentation in my office by Friday of last week. There were problems and that documentation was not provided until Monday morning at the start of the trial. That documentation made it necessary to subpoena the Ritchies. * * * The problem is in the documentation that was provided to us it turns out that we're going to have to have the Ritchies here or we are going to have some 'Hearsay' problems with regard to things that occurred during the tenancy. * * * They are essential witnesses for our part."

The court pointed out that the Ritchies would not have been present if the trial had continued into Monday afternoon and that defendants did not raise the issue in any way on Monday, such as asking for a continuance in order to subpoena them. It then stated its understanding of the matter:

> "We started this trial, I can't remember if it was Monday or Tuesday. It was Monday, I believe.

> "[Plaintiff's counsel]: Monday.

> "THE COURT: And, we could not complete it in a timely fashion. So, I found another date for which this court would be free to continue the trial. Now, I don't—As far as I'm concerned, what happened Monday morning is what we are going to live with. We started this trial Monday morning. It should have been finished on Monday, and had it not been

for the scheduling—I mean, this trial should have been set in one of the upstairs courts; should have been on call so it could have gone to a place where a full day hearing could take place. That didn't happen, so the court is accommodating the parties by the virtue of the fact that you've already had witnesses in here and you've already, you know, presented a great deal of testimony, and I'm going to hear it Friday afternoon. But, as far as I'm concerned, you didn't *raise this issue Monday morning. If I hadn't had anything* Monday afternoon, this case would have been finished by Monday evening, and I'm—You haven't served timely subpoenas and I'm not going to order that the Ritch[i]es be here and I'm not going to continue it."

Defendants' counsel then argued that the Ritchies were essential witnesses. "These are people that managed the property. We would not be subpoenaing but for gaps in the records that were provided to us Monday morning." He explained that

"the repair records have substantial gaps in them, and there is correspondence with Benchmark properties, I assume initiated by the Ritchies, that are at odds with the log books. There are also conversations between Mrs. Ritchie and my clients during a period of time when the Ritchies were managing the properties that are not recorded in the log books, but however, are mentioned in the letter, dated December 5, 1997, that was sent to my clients. And, this is a hot issue in this case."

The court responded that "the bottom line is they were not subpoenaed for Monday." "I think, in the interest of justice and fairness, the trial was Monday morning, and had we not had a trial before you, we probably would have finished Monday and there would have been no subpoenas for the Ritchies[.]" The court concluded that it would not require the Ritchies to appear.

■ At defendants' request, at the very end of the trial, the trial court again stated the basis for its ruling:

"What I found * * * was that this trial was supposed to be completed within one day. It could not be because of the Court's calendar. I do not believe that once this trial was started and continued, due to no fault of the parties, other than this should have been on the call docket, that you can

then subpoena witnesses that would not have been available the day the trial was supposed to take place. And that's what I found and that was the basis for my holding."

ORCP 55 A provides that a subpoena is "a writ or order directed to a person and may require the attendance of such person at a particular time and place to testify as a witness on behalf of a particular party therein mentioned * * *. A subpoena requiring attendance to testify as a witness requires that the witness remain until the testimony is closed unless sooner discharged[.]" Nothing in that rule or in the appellate case law requires that a party serve a trial subpoena before the beginning of trial for the subpoena to be valid and enforceable. On the other hand, the rule expressly requires a subpoenaed witness to remain until the close of testimony, provided that the party that issued the subpoena continues to pay the required witness fees.

We have no doubt that a court has discretion to quash a subpoena, issued in the midst of a trial or otherwise, when compliance would work a hardship on the witness or would otherwise be oppressive. *Cf.* ORCP 36 C (establishing criteria for protective order during discovery); ORCP 55 B (establishing criteria for quashing a subpoena *duces tecum*). Thus, a witness who received two separate subpoenas requiring the witness to appear in two different courts that were 90 miles apart with only one hour between the times for appearance was not subject to sanctions for contempt when the witness appeared in one but not both courts. *See State v. O'Malley*, 255 Or 544, 469 P2d 36 (1970), *overruling and adopting dissent in State v. O'Malley*, 248 Or 601, 435 P2d 812 (1967). That, however, is not this case. The court did not base its decision on hardship, oppression, or abuse but on an absolute refusal to enforce a subpoena solely because it was issued after the trial began. The court did not exercise its discretion but applied an incorrect rule of law.

Plaintiff does not defend the trial court's action on the grounds on which the court expressly relied. Rather, plaintiff argues, as it did to the trial court, that the subpoena did not provide a reasonable time for the Ritchies to meet with their

attorney to prepare for trial and that it required their attendance at a time when they planned to be out of town on business and vacation. We do not need to consider whether the trial court could have quashed the subpoena on those grounds because it did not do so. Plaintiff emphasizes that the trial court stated that it acted "in the interests of justice and fairness" and argues from that statement that the court considered all of the grounds that plaintiff presents on appeal. The problem, however, is that the trial court made that statement in the context of quashing the subpoenas because, in its view, the subpoenas should have been issued and served before trial began. That is all that the court discussed during the argument on the motion to quash; that was the only ground that it mentioned when it returned to the issue at the end of the trial. We cannot affirm a discretionary decision on a ground that the trial court expressly failed to consider.

■     Plaintiff next argues that defendants failed to make an offer of proof or otherwise show that the court's action in quashing the subpoenas was prejudicial error. We disagree. One of the issues that the parties litigated at trial was whether defendants had begun making verbal complaints to plaintiff shortly after they occupied the rental house. Defendants testified that they had done so, but the trial court specifically found that defendants' testimony was not credible on that point. The trial court reasoned that the fact that defendants had made written complaints called into question their testimony that they had also made verbal complaints.

According to the representations defendants' attorney made at the hearing on the motion to quash, the Ritchies managed the property and could have testified whether defendants had made verbal complaints to them. Defendants' attorney explained that he had expected to receive log books from plaintiff on the morning of trial, which presumably would have documented the verbal complaints from defendants. The log books he received, however, did not reflect "conversations between Mrs. Ritchie and [defendants] during a period of time when the Ritchies were managing the properties." At least one of the reasons defendants sought to call the Ritchies was to substantiate what the log books did not show. If the Ritchies testified as defendants anticipated, then

their testimony would have corroborated defendants' testimony.

■■    A party may make an offer of proof by summarizing what the proposed evidence would show. *See State v. Phillips*, 314 Or 460, 466, 840 P2d 666 (1992). Although defendants' offer of proof in this case was not extensive, it was sufficient "to make it possible for the trial judge to know the nature of th[e] evidence and for a court on review to be able to determine whether the judge's ruling was a permissible one." *State v. Wright*, 323 Or 8, 14, 913 P2d 321 (1996). In light of the fact that the trial court specifically found that defendants had made no verbal complaints to plaintiff, we cannot say that denying defendants the right to call the Ritchies did not substantially affect their right to present their case. *See Baker v. English*, 324 Or 585, 932 P2d 57 (1997); *Doran v. Culver*, 88 Or App 452, 455, 745 P2d 817 (1987), *rev den* 305 Or 102 (1988).

Reversed and remanded.