Argued and submitted May 20, reversed August 14, 2002

## Sherill WILLIAMSON,
*Respondent,*

*v.*

## Scott HUNT
## and Karen Hunt,
*Appellants.*

## 98-DR-0887; A112192

51 P3d 694

Frank C. Rote, III, argued the cause for appellants. With him on the briefs was Brown, Hughes, Bird, Rote & Wetmore.

Lynn M. Myrick waived oral argument and filed the brief for respondent.

Before Landau, Presiding Judge, and Brewer and Schuman, Judges.

SCHUMAN, J.

## SCHUMAN, J.

The trial court awarded grandmother the right to visit grandchild despite the objection of child's parents, grandmother's daughter and son-in-law (parents). Parents appeal, arguing that the trial court's decision violated Oregon's grandparent visitation statute (subsequently repealed) and, if not, that the statute was unconstitutional. Parents also argue that the court erred in awarding grandmother temporary visitation during the litigation and in not permitting child to testify. We reverse.

On *de novo* review, ORS 19.415(3), we find the following facts. Child was born to Karen Hunt (mother) and Ted Weiss, mother's then-husband, on February 21, 1991. Weiss severely and repeatedly abused both mother and child, leading ultimately to his incarceration. The couple divorced in 1994. During and after their marriage, mother and child lived either with grandmother and her husband (mother's stepfather) or in a mobile home on grandmother's property, except for a short period during which mother and child lived in a shelter for abuse victims.

On January 1, 1998, mother married Scott Hunt (stepfather). After the marriage, the couple, along with child and stepfather's child from an earlier marriage, continued to live in a mobile home on grandmother's property. Child at first continued her frequent and regular visits with grandmother, but tensions began to develop as parents became increasingly dissatisfied with some of grandmother's conduct toward child (for example, giving her snacks and presents) and with the way child behaved after the visits. Those tensions came to a head in June 1998, at around the time stepfather officially adopted child, thereby terminating Weiss's parental rights.[1] In addition to their concerns about snacks and gifts, parents began to entertain more serious doubts about whether grandmother and mother's stepfather were providing a safe and healthy environment. Those doubts

---

[1] This adoption was later nullified because Weiss did not have the benefit of court-appointed counsel at the termination proceeding. *Hunt v. Weiss*, 169 Or App 317, 8 P3d 990 (2000).

were based not only on conflicting attitudes toward child-rearing, but also on mother's own experience growing up in grandmother's household and her observations of that household as an adult. Although grandmother denied many of the events on which mother's doubts rested, many others are undisputed: some sibling incest, some violence, some exposure to substance-abusing sex-abusers.

Because of those concerns, parents began to keep child away from grandmother. On July 7, 1998, grandmother, through her attorney, requested that parents allow one overnight visit per week, after-school chats "to see how her day has gone," telephone communication "on a regular basis," and visitation on major holidays. Grandmother's letter informed parents that, if they refused to make the requested accommodations within six days, she would file a petition in circuit court seeking court-ordered visitation. Parents refused, and grandmother filed her petition on July 29, 1998. Between that filing and the first hearing some two months later, the parties agreed to one hour per week of supervised visitation in the offices of a social services provider in Grants Pass but, just before the hearing, those visits were suspended because parents were dissatisfied with the level of supervision.

The first hearing on the petition occurred on October 6, 1998, and resulted in an order allowing one hour of supervised visitation per week during the litigation. The trial on the merits of the petition took place in three days spread over the next two years, concluding with a judgment on October 31, 2000. Between the start of the trial and its conclusion, the United States Supreme Court handed down *Troxel v. Granville*, 530 US 57, 120 S Ct 2054, 147 L Ed 2d 49 (2000), holding that a fit custodial parent has a fundamental right under the Due Process Clause of the Fourteenth Amendment to make decisions about the care, custody, and control of her child and that the right is violated when a trial court orders grandparent visitation over the objections of the parent without according sufficient weight to the parent's wishes or recognizing the presumption that the parent acts in the best interest of the child.

At the conclusion of the trial, the judge wrote a letter opinion stating, "This case is interesting in light of [*Troxel v. Granville*,]" and concluding that grandmother "has carried her burden." The court also wrote:

"I also find that the parents' prerogative concerning their children and who that child should or should not be exposed to is entitled to special weight. Therefore, during the visitation with [grandmother] the child is not to be exposed to [Weiss or Weiss's mother] and is not to be left in the house alone with [grandmother's husband] or left alone with any male without [grandmother's] personal supervision."

The judgment awarded grandmother three full days of visitation per month subject to those limitations. Parents appeal.

Before directly addressing parents' assignments of error that deal with the application and constitutionality of the grandparent visitation statute, ORS 109.121, we must decide whether that statute, repealed in 2001, was retroactively replaced by an amended version of ORS 109.119, Oregon's general third-party custody and visitation statute. Both the repeal and the amendment were contained in Oregon Laws 2001, chapter 873. The evident purpose of that act was to bring Oregon law into compliance with the dictates of *Troxel*. Section 1 of this "*Troxel* fix" amended ORS 109.119 to create a rebuttable presumption in favor of parents as against third parties. Section 2 repealed ORS 109.121. Section 3 provides, as follows:

"The amendments to ORS 109.119 by section 1 of this 2001 Act apply to petitions filed under ORS 109.119 or 109.121 (1999 Edition) before, on or after the effective date of this 2001 Act [July 31, 2001]."

Or Laws 2001, ch 873, § 3, *compiled as a note after* ORS 109.119 (2001). It is therefore arguable that the 2001 version of ORS 109.119, and not ORS 109.121, should "apply to" this case, which began, in fact, with a "petition[ ] filed * * * under ORS 109.121 * * * before" July 31, 2001. That argument, however, has no merit. The retroactivity section applies only to petitions filed under the 1999 edition of ORS 109.121. ("ORS 109.119 or 109.121 (*1999 Edition*).)." *Id.* (emphasis added). The petition in this case was filed before 1999, under the 1997 edition. Thus, the repeal of ORS 109.121 and the

purportedly retroactive replacement of it with the 2001 version of ORS 109.119 do not affect this action.

■        ORS 109.121 (1997) provided, in part:

"(1)(a)   A child's grandparent may, upon petition to the circuit court, be granted an order establishing reasonable rights of visitation between the grandparent and the child if:

"(A)   The   grandparent   has   established   or   has attempted to establish ongoing personal contact with the child; and

"(B)   The custodian of the child has denied the grandparent reasonable opportunity to visit the child.

"* * * * *

"(5)   Any order creating visitation rights under this section shall be according to the court's best judgment of the facts of the case and shall include such conditions and limitations as it deems reasonable. In making or modifying such an order, the court shall be guided by the best interests and welfare of the child."

In *Harrington v. Daum*, 172 Or App 188, 18 P3d 456 (2001), we construed ORS 109.119 in the light of the Fourteenth Amendment holding in *Troxel*. The trial court in *Harrington*, applying a pure "best interest" standard, had concluded that a nonparent deserved visitation despite the parent's objection. We reversed, following *Sleeper and Sleeper*, 328 Or 504, 982 P2d 1126 (1999), where the Supreme Court concluded that the statutory term "best interest of the child" from ORS 109.119(3) (1999) meant best interest of the child subject to "some supervening right belonging to the biological parent." *Harrington*, 172 Or App at 194 (quoting *Sleeper*, 328 Or at 511). After noting that interpretation and discussing *Troxel*, we concluded that the "supervening right" *Sleeper* referred to included the fundamental constitutional right *Troxel* identified:

"*Troxel* now establishes that the court must give significant weight to a fit custodial parent's decision. That constitutional right is a supervening right that both affects the

determination of whether visitation is appropriate and prevents the application of solely a 'best interests of the child' analysis." *Harrington*, 172 Or App at 198.

A similar analysis and a similar result are appropriate here. ORS 109.121(5) required the court to order reasonable grandparent visitation guided by the "best interest and welfare of the child." In construing the term "best interest," we may look to definitive Supreme Court interpretations of that term in related statutes. *Holcomb v. Sunderland*, 321 Or 99, 105, 894 P2d 457 (1995); *State v. Carr*, 319 Or 408, 411-12, 877 P2d 1192 (1994). One such statute is ORS 109.119, which, like ORS 109.121, governs third-party visitation. In *Sleeper*, the Supreme Court interpreted the term "best interest" in ORS 109.119 to mean "best interest" subject always to "some supervening right belonging to the biological parent." 328 Or at 511. In *Harrington*, we identified that right as the one identified in *Troxel*. In other words, and to summarize, an application of ORS 109.121, as we interpret it in accordance with Oregon Supreme Court precedent, must conform to the dictates of *Troxel*; in particular, the court's application must apply the "best interest" test only as that test is subject to and limited by the fundamental rights of the parents. The court must rebuttably presume that fit parents know what is in the best interest of their child. *Troxel*, 530 US at 68. So interpreted and applied, ORS 109.121 was not unconstitutional.

■     The trial court in this case stated in its letter opinion, written before this court's opinion in *Harrington*, that its decision to allow visitation recognized "that the parents' prerogative concerning their children and who that child should or should not be exposed to is entitled to special weight." On *de novo* review, and in the light of *Harrington*, we conclude that this "special weight" was not sufficiently weighty. Nothing in the record alleges or demonstrates that parents are unfit or that their parenting skills are harmful to child. The most that could be inferred is that they are stricter than grandmother and her husband. Indeed, grandmother presents absolutely no evidence whatsoever to overcome the presumption that parents' decision strictly to limit or even to ban visitation is in child's best interest. At best, her testimony establishes that she and her husband harbor great

affection for child and provide her with a gentle and accepting alternative to the more regimented atmosphere she has at home and that some of mother's recollections of an unsavory childhood under the care and supervision of grandmother may be exaggerated or false. Although those facts might convince some observers that visitation would do child no harm—a conclusion to which no experts at trial testified, and which flatly contradicts not only the conclusion of parents but also of child's therapist—they fail by a large margin to overcome the powerful presumption that parents know best what is best for their child.

Because we conclude that the trial court erred in granting court-ordered visitation, we need not address parents' contention that it also erred in allowing temporary visitation rights or in refusing to permit child to testify.

Reversed.