Argued and submitted July 9, award of custody reversed and remanded; attorney
fee award vacated and remanded for reconsideration; otherwise affirmed
October 9, 2002

## In the Matter of the Marriage of

### Eric Michael WILSON,
*Respondent,*

*and*

### Monique Alwien Quade WILSON,
*Appellant.*

### Monique Alwien WILSON,
*Petitioner,*

*v.*

### Eric Michael WILSON,
*Respondent.*

### 9908-67658 and 0004-63675; A113524

55 P3d 1106

Mark Kramer argued the cause for appellant. With him on the briefs was Kramer & Associates.

George W. Kelly argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Brewer and Schuman, Judges.

SCHUMAN, J.

## SCHUMAN, J.

■    The trial court in this dissolution case awarded hus-
band custody of two children. The older child is the biological
daughter of wife and the stepchild of husband. The younger
child is the biological daughter of husband and wife. The trial
court also awarded husband $10,000 for attorney fees. Wife
appeals the custody and attorney fees decisions. We review
the custody decision *de novo, State ex rel Johnson v. Bail*, 325
Or 392, 394, 938 P2d 209 (1997), and the attorney fee award
for abuse of discretion, ORS 20.075(3). We reverse and
remand the trial court's custody judgment and vacate the
attorney fee judgment.

    Husband and wife were married in September 1992.
At that time, wife already had a 22-month-old daughter, C,
from an earlier relationship. From the first days of their rela-
tionship, husband and wife have been more or less equally
involved in nurturing and caring for C. Although husband
never adopted C, he is the only father figure she has known;
her natural father does not maintain any contact with either
C or wife. C uses husband's last name and learned that he
was not her biological father only after husband and wife sep-
arated. Nonetheless, because husband is a stepfather, his
claim to custody of C is governed by ORS 109.119, which
involves the rights of a parent *vis-à-vis* a stepparent who has
established a "child-parent relationship." ORS 109.119(1).
Another daughter, E, was born to the parties in July 1995.
Custody of E is governed by ORS 107.137, dealing with the
rights of legal parents *vis-à-vis* each other.

    Each party acknowledges that the other has a strong
and loving bond with the children. Those acknowledgments
are remarkable, because shortly after E's birth in 1995, wife
took a job working nights and weekends as a 9-1-1 operator,
a situation to which husband reacted with resentment and
jealousy, and the marriage became increasingly tense, so
that by the time of the separation and litigation, the parties
were locked in a relationship characterized by vitriolic non-
cooperation, mutual threats, and low-level violence. In three
days of trial testimony and in extensive written submissions,

each party attempted to draw a convincingly repugnant portrait of the other, complete with mutual accusations of assault, false reports to law enforcement authorities, psychological mistreatment of the children, inability to subordinate selfish interests to the children's welfare, new relationships with unsavory partners, and other misdeeds, detailed recital of which would not serve the bar or bench and would affirmatively disserve the parties and the children.

The trial court found that neither of the parties is the monster depicted by the other. The court found, rather, that "other than their conflict with each other," each is "nurturing, attentive," with "adequate parenting skills." That finding echoes the court-appointed custody evaluator's, and, on *de novo* review of the extensive record, we agree. The parties are both devoted parents who, trapped in the emotional vortex of a dramatically failing relationship, on a few occasions acted very badly to each other and to the children.

We also agree with the trial court and the custody evaluator that, under the pure "best interest of the child" standard applied in both child and stepchild custody cases at the time of this dissolution, husband prevails, albeit barely. The court made careful and detailed application of the "best interest" factors in ORS 107.137(1)(a) to (f). In summary, it found that the children had closer emotional ties with husband's family than wife's; that husband had a "slight edge" over wife with respect to the parties' attitude toward and interest in the children; that husband was "in a better position and more inclined to continue and foster" relationships with other family members; that, although "there's been a history here of mutual and extreme anger which has been borderline in terms of violence," husband, unlike wife, "has grown and learned how to deal with his anger"; that husband was the primary caretaker, once again by only a "slight edge"; and that, with respect to each spouse's willingness and ability to foster a relationship between the children and the other spouse, a "mixed picture" emerges with another slight advantage to husband.

Based on those findings, the trial court awarded custody to husband. But because the trial court regarded the "best interest" inquiry to be close, it ordered a visitation

schedule approaching joint custody. Wife received parenting time Monday afternoon to Thursday morning during the school year and Mother's Day; half of summer vacations; and alternate Christmas vacations, spring breaks, children's birthdays, and Thanksgivings.

On appeal, wife contends that the 2001 amendments to ORS 109.119 apply retroactively to the dispute over custody of C; that under those 2001 amendments, wife, not husband, must be awarded custody, because the 2001 amendments require more than a mere "best interest of the child" finding in order to award custody to a nonparent over the objection of a parent; that if the earlier version of ORS 109.119 was the correct statute, it is facially unconstitutional because it permitted an award of custody to a nonparent under a mere best interest standard; that if not facially unconstitutional, it was applied unconstitutionally in this case; and that, in any event, even if the "best interest of the child" standard is correct and constitutional, as it undeniably is with respect to E, the natural child of husband and wife, that standard was not met here.

Understanding the relationship and rationale of those assignments of error requires a brief review of some case law from this court, the Oregon Supreme Court, and the United States Supreme Court, as well as recent legislation.

As relevant to this case, ORS 109.119 (1997) provided:

> "(1)  Any person, including but not limited to a * * * stepparent * * * who has established emotional ties creating a child-parent relationship or an ongoing personal relationship with a child, or any legal grandparent may petition or file a motion for intervention with the court having jurisdiction over the custody, placement, guardianship or wardship of that child * * *.

> (2)(a)  If the court determines that a child-parent relationship exists and if the court determines by a preponderance of the evidence that custody, guardianship, right of visitation, or other generally recognized right of a parent or person in loco parentis, is appropriate in the case, the court shall grant such custody, guardianship, right of visitation or other right to the person, if to do so is in the best interest of the child."

In *Shofner and Shofner*, 137 Or App 543, 905 P2d 268 (1995), *rev den*, 322 Or 644 (1996), this court suggested the possibility that the statute implicitly directed courts to decide custody disputes between a biological parent and a third party with a presumption in favor of the biological parent, which could be overcome only for "compelling" reasons. However, in *Sleeper and Sleeper*, 328 Or 504, 511, 982 P2d 1126 (1999), the Supreme Court rejected this reading of the statute, holding instead that it

> "requires the court to examine the circumstances surrounding the custody dispute and to determine whether the best interests of the child call for an award of custody to the nonbiological parent. If the best interests of the child call for custody to the nonbiological parent, then the court must make such award, unless to do so would violate some supervening right belonging to the biological parent."

The Oregon Supreme Court has not had occasion to explore what a "supervening right" might be or the extent to which the *Sleeper* "best interest subject to supervening right" analysis differs from the earlier "parental presumption subject to compelling interest" analysis.

This court, however, has had that occasion. The immediate stimulus was the United States Supreme Court's decision in *Troxel v. Granville*, 530 US 57, 120 S Ct 2054, 147 L Ed 2d 49 (2000). In that case, the grandparents sought an increase in visitation with their grandchildren, contrary to the wishes of the children's mother. The trial court applied Washington's "best interest of the child" statute and allowed the grandparents' motion. The Washington Supreme Court reversed, and the United States Supreme Court affirmed the reversal. Although the case produced several opinions, none of which commanded a majority, at least six justices of the Supreme Court agreed that, "[i]n light of * * * extensive precedent, it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Id.* at 66.[1] The same justices also agreed that, under the particular circumstances

---

[1] Justice O'Connor wrote the plurality opinion from which that quotation is taken. Chief Justice Rehnquist, Justice Ginsburg, and Justice Breyer joined her. Justice Thomas wrote a concurrence acknowledging that the Court's precedent established the fundamental right identified by the plurality, but advocating a

presented by the case, the state trial court's decision to override the biological parent's reasonable choice to limit visitation merely because such visitation was "in the best interest of the child" impermissibly infringed on that fundamental parental right. *Id.* at 67. The Court, however, explicitly declined to declare Washington's statute facially unconstitutional. *Id.* at 73.

Shortly after *Troxel* was decided, this court, in *Harrington v. Daum*, 172 Or App 188, 18 P3d 456 (2001), confronted an argument that ORS 109.119(2)(b) (1997) violated the biological parent's rights identified in *Troxel* because the statute permitted a court to award visitation to a nonparent with a "personal relation" to a child, over the objection of the child's biological parent, solely because doing so was in the child's best interest. We rejected that argument, salvaging the constitutionality of the statute by integrating *Troxel* into the *Sleeper* court's interpretation of ORS 109.119 (1997). We held:

> "*Troxel* * * * give[s] new significance to the Supreme Court's reference in *Sleeper* to a supervening right of the parent that changes how the statute would otherwise function. Under *Troxel*, the parent's right to make decisions concerning the child's upbringing is such a supervening right. The result is to change the analysis to one that is closer to what we discussed in *Shofner*. * * * *Troxel* now establishes that the court must give significant weight to a fit custodial parent's decision. That constitutional right is a supervening right that both affects the determination of whether visitation is appropriate and prevents the application of solely a 'best interests of the child' analysis."

*Harrington*, 172 Or App at 197-98 (footnote omitted). *Harrington* was a visitation case. In *Newton v. Thomas*, 177 Or App 670, 673-74, 33 P3d 1056 (2001), we held that that language applies with equal force in custody disputes.

■ *Troxel, Harrington,* and *Newton*, then, alter the interpretation of ORS 109.119 in *Sleeper*. Instead of basing custody or visitation decisions on a "best interest of the child

---

different method of analysis. Justice Souter wrote a concurrence explicitly recognizing the right but advocating a "facial" as opposed to an "as applied" invalidation of Washington's statute.

subject to supervening parental right" analysis, we now give "significant weight" in that calculus to a fit biological parent's fundamental right to determine the care, custody, and control of his or her children. As the *Troxel* plurality phrased that idea, we give force to "the traditional presumption that a fit parent will act in the best interest of his or her child." *Troxel*, 530 US at 69. The presumption approaches in strength the one we adopted in *Shofner*, which could be overcome only for compelling reasons. Thus, a fit biological parent's right is "supervening" not in the sense that it always and necessarily "supervenes" or trumps the outcome of a pure "best interest of the child" inquiry, but in the sense that the right "supervenes" the pure "best interest" analysis itself, replacing it with one in which a fit biological parent will presumptively prevail over a nonparent unless the nonparent presents compelling reasons to overcome that presumption, for example by showing that a ruling in favor of the biological parent will harm the child.

This court was not the only institution to respond to *Troxel*. In 2001, the legislative assembly passed a so-called "*Troxel* fix" radically amending ORS 109.119. Or Laws 2001, ch 873, § 1. The new statute creates a rebuttable presumption in favor of the "legal parent" as against a third-party nonparent, including a stepparent. ORS 109.119(2). The statute also lists factors a court may consider in deciding whether the nonparent rebutted the presumption. ORS 109.119(4)(b). Further, the legislative assembly specified that the amendments are to apply "to petitions filed under ORS 109.119 or 109.121 (1999 Edition) before, on or after the effective date of this 2001 Act." Or Laws 2001, ch 873, § 3, *compiled as a note after* ORS 109.119 (2001).

■ Against the background of that history, we turn to wife's assignments of error. Several are easily resolved. First, we hold that the 2001 version of ORS 109.119 does not apply to this case. The petition for custody was filed on July 29, 1999. The "1999 Edition" of ORS 109.119 did not take effect until October 23, 1999. Thus, the petition in this case was *not* "filed under" the "1999 Edition," but under the "1997 Edition," so the 2001 amendments do not apply. *Williamson v. Hunt*, 183 Or App 339, 343-44, 51 P3d 694 (2002); *Newton*, 177 Or App at 672.

█   Second, we reaffirm that the pre-2001 version of ORS 109.119 as construed in *Harrington* and *Newton* was not facially unconstitutional. *Williamson*, 183 Or App at 345. A statute is facially unconstitutional only if it is incapable of constitutional application in all cases. *Jensen v. Whitlow*, 334 Or 412, 420, 51 P3d 599 (2002). To use an obvious hypothetical example, the pre-2001 version of ORS 109.119 would award custody to a grandparent who had established a parent-child relationship if the legal parents had repeatedly abused the child and were therefore unfit; that award would not violate the Fourteenth Amendment as construed in *Troxel*. 530 US at 73.

The key question in this case, therefore, is whether husband, a nonparent, may be awarded custody of C under ORS 109.119(2)(b) (1997) as constitutionally construed and applied.[2] The trial court decided in favor of husband, using a pre-*Harrington* "best interest" standard. Wife argues that, under the "parental preference" standard first announced in that case and not available to the trial court, she, not husband, should have custody of C. We agree.

We held in *Newton*:

"[A] court may not grant custody to a person other than a biological parent instead of a biological parent based solely on the court's determination of what is in the child's best interest; rather, the court must also give significant weight to the supervening fundamental right of biological parents to the 'care, custody, and control of their children.' *Troxel*, 530 US at 65."

*Newton*, 177 Or App at 674 (footnote omitted). We have also characterized the biological parent's advantage as a powerful (albeit rebuttable) presumption in his or her favor. *Williamson*, 183 Or App at 346. We have stated, as noted above, that *Troxel* requires a parental presumption that may be overcome only for reasons that approach the "compelling"

───────────

[2] Husband maintains that wife did not argue below that ORS 109.119 (1997) was unconstitutionally applied but only that it was facially unconstitutional. We disagree. Wife's trial memorandum argues that, "[a]bsent a showing of unfitness, [husband] should not be allowed to interfere with [wife's] constitutionally protected liberty interest." That argument asked the court to examine the facts of this particular case, thereby adequately raising an "as applied" challenge.

standard we adopted in *Shofner. Harrington,* 172 Or App at 197. Although none of our cases has determined what "significant" weight means or exactly how much evidence is necessary to rebut the parental presumption, in the present case no such fine calibration is necessary. The trial court, applying a pure "best interest" standard, found in favor of husband but acknowledged that the case was difficult and close. We agree. Husband's side of the scales and wife's are almost evenly weighted. Under our current, post-*Harrington* standard, with *significant* weight added to wife's side by virtue of her biological relation to C, that outcome must change.

■   It is true that neither our earlier cases nor *Troxel* itself involves a dispute between a parent and a stepparent. It might be argued that a stepparent, in particular one who has been the primary caretaker of his 10-year-old stepchild for nearly nine years of her life, stands in such a close and quasi-parental relation to the stepchild as to reduce, if not eliminate, the magnitude of the parental preference. However, the legislature chose to put stepparents on an equal footing with "[a]ny person, including but not limited to a related or nonrelated foster parent * * * or relative by blood or marriage who has established emotional ties creating a child-parent relationship * * *." ORS 109.119(1) (1997). Our statutes do not recognize any distinctions among those categories of quasi-parents; if one group has more quasi-parental rights, or if, within a category, some have more rights than others based on the closeness of their relationship with the child, those rights must therefore have some constitutional source. The only plausible one would be a liberty interest under the Fourteenth Amendment to the United States Constitution. In determining the contours of that amendment and the rights it confers, we look to the decisions of the United States Supreme Court. *Megdal v. Oregon State Bd. of Dental Examiners,* 288 Or 293, 300, 605 P2d 273 (1980). No cases from that Court hold that stepparents have any liberty interest in maintaining custody of their stepchildren. Indeed, in *Smith v. Organization of Foster Families,* 431 US 816, 846, 97 S Ct 2094, 53 L Ed 2d 14 (1977), the Court notes its reluctance to create a comparable interest in foster parents when doing so would be in derogation of the solidly established liberty interest of a biological parent. Further, the existence or

nonexistence of a constitutionally protected liberty interest derives from its nature, not from its magnitude. *Board of Regents v. Roth*, 408 US 564, 570-71, 92 S Ct 2701, 33 L Ed 2d 548 (1972).

■　　We therefore hold that, under a proper application of ORS 109.119 (1997), wife is entitled to custody of C. She is the biological parent; the significant weight of that fact tips the otherwise closely balanced scales in her favor.

We turn, then, to E, the biological daughter of both parties. The trial court concluded that her best interest was served by awarding custody to husband, with generous parenting time to wife. That determination, however, did not take into account the differing standards applied to children and stepchildren. In light of subsequent decisions recognizing different standards for stepchildren, entitling wife to custody of C, the best interest calculation regarding E must also change. Two of the factors we consider in determining best interest are "[t]he emotional ties between the child and other family members" and "[t]he desirability of continuing an existing relationship." ORS 107.137(1)(a), (c). Because the uncontradicted testimony establishes that C and E have a strong bond, those factors militate against separating them. When the fact of wife's custody of C is folded into the best interest calculation—a fact that the trial court could not have known and without which it found the scales to be nearly in equipoise—the outcome shifts in favor of wife.

■ ■　　To summarize: Custody of C is determined under ORS 109.119(2)(b) (1997). As construed in this court's cases, that statute was not facially unconstitutional. It was, however, applied unconstitutionally, because the trial court used the "best interest" standard the court believed was in effect at the time instead of the "parental preference" standard this court subsequently adopted in *Harrington*. Applying the constitutionally construed statute to the facts here, we conclude that wife must have sole legal custody of C. That fact, in turn, means that under the "best interest" standard for determining custody disputes between two legal parents, wife must also have sole legal custody of E. We therefore reverse and remand. However, because we agree with the trial court that both parties are capable parents and that the differences

between their capabilities are minor, we instruct the trial court on remand to award husband parenting time three days per week during the school year and Father's Day; half of summer vacations; and alternate Christmas vacations, spring breaks, children's birthdays, and Thanksgivings.

The trial court awarded husband $10,000 in attorney fees under the authority of ORS 107.105(1)(i) (dissolution judgment may award attorney fees "as the court finds reasonably and necessarily incurred"), applying the criteria in ORS 20.075. In particular, the court found that both parties engaged in inappropriate conduct that contributed to substantially greater attorney fees but that wife's inappropriate conduct and lack of good faith "far outweigh[ed]" husband's. The court then considered that fact "in light of the fact that [husband's] positions on the various issues before the court were largely sustained at trial" and arrived at its judgment. Our decision obviously alters the calculation, but because attorney fee awards are committed in the first instance to the discretion of the trial court judge, ORS 20.075(3), we vacate the award and remand to the trial court for appropriate recalculation, if any.

Award of custody reversed and remanded; attorney fee award vacated and remanded for reconsideration; otherwise affirmed.