On respondents grandparents' petition for reconsideration filed December 16, and on respondents grandparents' motion to substitute grandparents' petition for reconsideration filed December 18, and respondents grandparents' petition for reconsideration (substituted) filed December 19, and appellant's response to petition for reconsideration filed December 20, 2002, resubmitted en banc March 5, reconsideration allowed; former opinion (184 Or App 249, 56 P3d 929) modified; opinion adhered to as modified by an equally divided court; request for remand denied by an equally divided court March 20, Michael David Lamont's petition for review on attorney fees denied and Christine and Patrick O'Donnell's petition for review allowed August 26, 2003 (335 Or 655)

See later issue Oregon Reports

## In the Matter of the Marriage of

### Rayne Elizabeth O'DONNELL-LAMONT (deceased),
*Petitioner,*

*and*

### Michael David LAMONT, Jr.,
*Appellant,*

*and*

### Christine O'DONNELL,
### Patrick O'Donnell, and Darrell Miller,
*Respondents.*

### C98 1284 DR; A112960

67 P3d 939

Eli D. Stutsman and David L. Heifetz, for petition.

Philip F. Schuster, II, and Dierking & Schuster, *contra.*

Before Deits, Chief Judge, and Edmonds, Landau, Haselton, Armstrong, Linder, Wollheim, Kistler, Brewer, and Schuman, Judges.

EDMONDS, J.

Kistler, J., concurring.

Deits, C. J., concurring in part and dissenting in part.

Landau, J., concurring in part and dissenting in part.

**EDMONDS, J.**

■        Grandparents petition for reconsideration of our decision in this case. *O'Donnell-Lamont and Lamont*, 184 Or App 249, 56 P3d 929 (2002). All members of the court agree that we should allow the petition and modify our former opinion to state that the 2001 amendments to ORS 109.119 are fully retroactive. Five members believe that we should remand for further proceedings in the trial court; five members believe that we should not remand. We therefore deny the request that we remand by an equally divided court. The effect of this decision is that the previous decision as modified remains the effective decision of the court. This opinion contains the opinion of the court on the first issue and an opinion of the author on the remaining issues.

        In our original decision, we reversed the trial court's award of custody of the children to grandparents and remanded with instructions to award custody to father. In doing so we analyzed the parties' rights based on our understanding of the United States Supreme Court's decision in *Troxel v. Granville*, 530 US 57, 120 S Ct 2054, 147 L Ed 2d 49 (2000). We did not consider the effect of the 2001 amendments to ORS 109.119, the statute that now governs the custody rights of persons who are not biological or adoptive parents, because grandparents filed their petition before the effective date of the 1999 version of ORS 109.119. *See Williamson v. Hunt*, 183 Or App 339, 343, 51 P3d 694 (2002).

■        In *Williamson* and in our former opinion in this case, we held that the amendments to ORS 109.119 do not apply to cases in which the petitioner first filed the petition before the effective date of the 1999 edition of ORS 109.119. We based that holding on the version of Oregon Laws 2001, chapter 873, section 3 (section 3) that appears in the 2001 edition of the Oregon Revised Statutes. That provision, as Legislative Counsel compiled it in the published statutes immediately after ORS 109.119, reads:

> "The amendments to ORS 109.119 by section 1 of this 2001 Act apply to petitions filed under ORS 109.119 or 109.121 (*1999 Edition*) before, on or after the effective date of this 2001 Act [*July 31, 2001*]."

(Emphasis added.) The emphasized reference to July 31, 2001, as the effective date of the Act is an insertion that Legislative Counsel made for the reader's convenience; the use of brackets shows as much. What is not clear from the compilation, however, is that the emphasized parenthetical reference to the 1999 edition of the *Oregon Revised Statutes* as limiting the scope of section 3 is also a Legislative Counsel insertion that does not appear in the statute as the legislature passed it and the governor signed it.[1] We first discovered that the parenthetical phrase was not part of the original statute when grandparents drew our attention to that fact in their petition for reconsideration. Legislative Counsel's certified compilation of the statutes is *prima facie* evidence of the law. ORS 171.285(2). However, it is not conclusive, and "[w]hen, as here, it appears that the law as the legislature adopted it differs in substance from the law as codified, we must follow the legislature's version." *Mitchell v. Board of Education*, 64 Or App 565, 569, 669 P2d 356, *rev den*, 296 Or 120 (1983). After we delete the reference to the 1999 edition of the statutes, it is clear that the legislature intended in section 3 to make the 2001 amendments to ORS 109.119 applicable to all petitions filed before the effective date of the statute; those amendments therefore apply to this case.[2]

The preceding discussion states the opinion of the court. What follows is the analysis that I believe we should adopt in analyzing the parties' rights in accordance with the version of ORS 109.119 that is presently effective. I then explain my reasons for concurring in the decision, by an

---

[1] We have examined section 3 both in the official publication of laws adopted at the 2001 regular legislative session and in enrolled House Bill 2427 as it appears on the state archives website.

[2] In *Williamson*, we believed that the parenthetical reference to the 1999 edition of the statutes limited the scope of section 3 of Oregon Laws 2001, chapter 873. Our examination of the statute as the legislature passed it, however, suggests an alternative reason for Legislative Counsel to have inserted the reference. Section 2 of the same session law repealed ORS 109.121. Thus, the purpose of stating that the 2001 amendments apply to petitions filed "under ORS 109.119 or 109.121 (1999 edition)" may have been to advise readers where to find *former* ORS 109.121, which was no longer in effect. Whatever the purpose of the reference, the language as enacted by the legislature makes it clear that the 2001 amendments to ORS 109.119 apply to all petitions filed before the statute's effective date. To the extent that our decision in *Williamson* and our statements in *Newton v. Thomas*, 177 Or App 670, 672 n 1, 33 P3d 1056 (2001), are inconsistent with that conclusion, all the members of the court agree that they are no longer controlling.

equally divided court, to deny grandparents' request for a remand.

ORS 109.119(2)(a) provides that, in any proceeding under the statute, including one to give custody to a nonparent over the legal parent's objection, "there is a presumption that the legal parent acts in the best interest of the child." ORS 109.119(4)(b) then provides:

> "In deciding whether the presumption described in subsection (2)(a) of this section has been rebutted and whether to award custody, guardianship or other rights over the objection of the legal parent, the court may consider factors including, but not limited to, the following, which may be shown by the evidence:
>
> "(A)  The legal parent is unwilling or unable to care adequately for the child;
>
> "(B)  The petitioner or intervenor is or recently has been the child's primary caretaker;
>
> "(C)  Circumstances detrimental to the child exist if relief is denied;
>
> "(D)  The legal parent has fostered, encouraged or consented to the relationship between the child and the petitioner or intervenor; or
>
> "(E)  The legal parent has unreasonably denied or limited contact between the child and the petitioner or intervenor."

The presumption in ORS 109.119(2)(a), that the legal parent acts in the best interests of the child, is the legislature's statement of the parent's constitutional right that we described in our previous opinion. Two of the nonexclusive criteria in ORS 109.119(4)(b) are directly relevant to the constitutionally required test of whether the legal parent can provide the care that the constitution requires in order for that parent to retain custody. A legal parent who is unwilling or unable to care adequately for the child, ORS 109.119(4)(b)(A), necessarily "cannot or will not provide adequate love and care" for the child. Whether circumstances detrimental to the child will exist if relief is denied, ORS 109.119(4)(b)(C), is closely related to whether placing the child in the legal parent's custody would cause an undue risk

of physical or psychological harm to the child. Those statutory criteria thus relate to the threshold issue of whether the nonparent has rebutted the presumption.

I conclude, for the reasons that we stated in our previous opinion, that the application of those statutory factors in this case leads to the same result that we reached in our previous decision under the constitutional tests, and I would therefore adhere to that result.

■ Judge Landau agrees that the 2001 amendments to ORS 109.119 apply to this case but would remand so the parties can present further evidence. He argues that *Troxel*, which the Supreme Court decided after the hearing but before the trial court's decision in this case, changed the law in a way that makes the existing record inadequate for our *de novo* review. For the following reasons, I disagree that a remand is appropriate.

First, although the hearing in this case came before *Troxel*, the trial court's decision came afterwards and the court discussed that decision in its opinion. The parties did not seek to introduce additional evidence in light of *Troxel*. In seeking remand, grandparents focus on the difficulty that the trial court had in applying *Troxel* to the record that the parties made at the hearing; they point out that at the time there were no appellate decisions to assist the court. Grandparents seem to suggest that we should remand so that the trial court can make new findings, primarily on the existing record, that are appropriate under our recent decisions applying *Troxel*. Their argument that we should remand "for further proceedings to develop the record as is necessary in light of the recent change in the law" appears to refer to that point. In any case, grandparents do not assert that they would seek on remand to present different evidence about the underlying facts from what they presented at the original hearing, nor do they give any suggestion of what additional facts may exist.

My review of the record indicates that, as is usual in custody cases, both sides presented all of the evidence available to them that might support their competing claims to custody of the children. Grandparents do not suggest that we are missing any evidence concerning father's allegedly questionable actions, the alleged benefits that the children

received while they lived with grandparents, or the children's progress in both homes, nor are we aware of any.[3] In our previous decision, we reviewed that evidence *de novo* on the record, ORS 19.415(3), giving careful consideration to the findings that the trial court made; I do not see how any additional findings that it might make on remand would assist us. Although the legal standard changed while the trial court was considering the case, the facts concerning the children's situation and the probable consequences of granting custody to father did not. The present record is adequate for us to review the facts under the correct legal standard as we have determined it.

Second, the decisions that Judge Landau cites in which the Supreme Court remanded for further trial court consideration do not support a remand in this case. In both cases, there were problems with the record that do not exist here. *Massee and Massee*, 328 Or 195, 970 P2d 1203 (1999), involved a division of marital property in which the record concerning an issue that the Supreme Court determined to be crucial was inadequate. This case involves child custody, in which a speedy decision is more important, and grandparents do not suggest that the current record is factually incomplete. In *State ex rel Juv. Dept. v. Lauffenberger*, 308 Or 159, 777 P2d 954 (1989), the Supreme Court expressly noted that the "record of the present proceeding is sparse," consisting largely of previous documents and oral summaries by counsel of what various witnesses would say if called, with no significant oral testimony or cross-examination. *Id.* at 166-67. That sparsity, which contrasts with the ample record in this case, was essential to the court's decision to remand for further evidence.

Finally, the nature of the case argues against a remand. Children need stability, and providing it is an essential goal in child custody cases. *See Colson and Peil*, 183 Or App 12, 21, 51 P3d 607 (2002) (one purpose of change of circumstances rule is to promote stability); *Teel-King and King*,

---

[3] The one possible exception is that the expert who conducted the custody evaluation relied on the wrong standard, which affected the weight that we gave his opinions. *O'Donnell-Lamont*, 184 Or App at 257 n 9. However, grandparents do not suggest that they would seek a new evaluation on remand.

149 Or App 426, 430, 944 P2d 323 (1997), *rev den*, 327 Or 82 (1998) (same). These parties have litigated the custody of the children for four years, a period that for primary school children (as these children were when the litigation began) can be an eternity. We have finally decided the issue on *de novo* review, based on a complete record and applying the constitutionally required legal standard. It is now time to put that decision into effect, to end the uncertainty, and to give these children the stability that they have been lacking for so long.

Reconsideration allowed; former opinion modified to state that 2001 amendments to ORS 109.119 are fully retroactive; opinion adhered to as modified by an equally divided court; request for remand denied by an equally divided court.

Armstrong, Kistler, and Schuman, JJ., join in this opinion.

**KISTLER, J.,** concurring.

In their petition for reconsideration, grandparents have asked us to remand this case because "the record necessary to support grandparents' case has been compromised by a post-trial, pre-appeal sea change in the law." I agree with the dissent that, when the parties did not have a fair opportunity to develop the record because the governing legal standards have changed, considerations of fundamental fairness, if not due process, require that we remand the case to give the parties that opportunity. A party, however, who seeks a remand to offer new evidence must do more than say that the standards have changed. A party also has the burden of identifying what sort of evidence he or she would offer on remand. The burden is not onerous; summarizing the sort of evidence that would be offered on remand ordinarily should suffice. *Cf. State v. Phillips*, 314 Or 460, 466, 840 P2d 666 (1992) (describing what is required for an offer of proof); *Benchmark Properties v. Hipolito*, 161 Or App 598, 604-05, 984 P2d 927 (1999) (same).

Grandparents have not met that burden here. As the lead opinion notes, grandparents did not ask the trial court to reopen the record in light of the Supreme Court's decision in *Troxel v. Granville*, 530 US 57, 120 S Ct 2054, 147 L Ed 2d 49

(2000), nor did they ask us to remand the case for that purpose when they filed their brief in this court. Only after we ruled that father was entitled to custody have grandparents asked us to remand the case because they did not have a fair chance to develop the record at trial. Not only is grandparents' request for a remand somewhat late, but grandparents have not identified what they would introduce on remand that they did not introduce in the original hearing. In the absence of such a showing, I agree with the lead opinion that we need not remand for an evidentiary hearing.

Haselton and Schuman, JJ., join in this concurrence.

**DEITS, C. J.,** concurring in part and dissenting in part.

I agree with the lead opinion that the 2001 amendments to ORS 109.119 apply to this case. For the reasons articulated by Judge Landau, however, I believe that this case should be remanded to develop the factual record. However, because the case will not be remanded, I write separately to emphasize the concerns about the lead opinion's statutory analysis that Judge Landau identifies.

The lead opinion reasons, in part, that, because the 2001 amendments apply,

"[t]he presumption in ORS 109.119(2)(a), that a legal parent acts in the best interests of the child, is the legislature's statement of the parent's constitutional right that we described in our previous opinion. Two of the nonexclusive criteria in ORS 109.119(4)(b) are directly relevant to the constitutionally required test of whether the legal parent can provide the care that the constitution requires in order for that parent to retain custody. A legal parent who is unwilling or unable to care adequately for the child, ORS 109.119(4)(b)(A), necessarily 'cannot or will not provide adequate love and care' for the child. Whether circumstances detrimental to the child will exist if relief is denied, ORS 109.119(4)(b)(C), is closely related to whether placing the child in the legal parent's custody would cause an undue risk of physical or psychological harm to the child. Those statutory criteria thus relate to the threshold issue of whether the nonparent has rebutted the presumption.

"I conclude, for the reasons that we stated in our previous opinion, that the application of those statutory factors in this case leads to the same result that we reached in our previous decision under the constitutional tests, and I would therefore adhere to that result."

187 Or App at 19-20.

Our analysis in the custody cases that we have decided under ORS 109.119 (1997) was statutory. In other words, using the methodology of *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), we interpreted ORS 109.119 (1997) as incorporating the federal constitutional presumption that gives effect to father's fundamental due process right to the care, custody, and control of his children, and our holdings were based on the application of that statute. A new statute applies to this case. We cannot assume that the new statutory language will be interpreted to incorporate or reflect the constitutional presumption or the factors necessary to rebut that presumption as we have described them. Instead, we must interpret the statutory language and apply it to the facts of a case, and, if a nonparent receives custody under the statute, we must determine whether the application of the statute has infringed on the fundamental right of the parent to the care, custody, and control of his or her child.

The lead opinion implies that the presumption under the statute is equivalent to the constitutional presumption and that two statutory factors are equivalent to the two necessary factors that we have identified to rebut the constitutional presumption. That may not be correct. For example, by definition, the term " '[c]ircumstances detrimental to the child' includes but is not limited to circumstances that may cause psychological, emotional or physical harm to a child." ORS 109.119(8)(b). That definition could be interpreted to be broader than the prong of the constitutional analysis concerning whether the child will face an undue risk of physical or psychological harm. Additionally, in *State v. Wooden*, 184 Or App 537, 546-51, 57 P3d 583 (2002), we reasoned that a parent who has established a sufficient relationship with the child has the fundamental right and is entitled

to the presumption. However, under the statute, a legal parent is entitled to the presumption.[1] ORS 109.119(2)(a). The lead opinion implies, without any analysis, that the constitutional presumption and the two factors necessary to rebut it are a part of the statute. However, the opinion does not explore the relationship between the statute and the constitutional presumption that effectuates a parent's fundamental right nor does it explore the relationship between the two statutory factors that it identifies and the other nonexclusive statutory factors.

As Judge Landau correctly asserts:

"I suppose that it could be argued that, if the statute merely 'codifies' the *Troxel* [ *v. Granville*, 530 US 57, 120 S Ct 2054, 147 L Ed 2d 49 (2000),] decision, the parties would be in no position to complain that they could not have adequately developed the record. But the argument rests on an assumption that the statute has such a limited effect. That assumption is debatable, to say the least. And we have not yet had occasion to decide the matter. Indeed, to determine whether the assumption is well founded would require us, among other things, to interpret the new statute, determine its constitutionality, address the standard of proof that it prescribes, and articulate its relationship to *Troxel*—all that simply to decide whether to remand the case. It strikes me that the better use of our resources is to address those questions as they arise, and are briefed, in concrete cases."

187 Or App at 29-30 (Landau, J., concurring in part, dissenting in part).

I agree that, in this case, even though the amendments apply, there is no need for us to apply them on reconsideration. If we were to apply ORS 109.119 (2001), it would result in a determination either that father receive custody under the statute's terms or that grandparents receive custody. A determination that father receive custody is consistent with the result in our former opinion. A determination that grandparents receive custody would require that we then determine whether father's substantive due process

---

[1] A legal parent is "a parent as defined in ORS 419A.004 whose rights have not been terminated under ORS 419B.500 to 419B.524." ORS 109.119(8)(d).

right to the care, custody, and control of his children was infringed through an application of the statute that results in an award of custody to grandparents. That is essentially what we did in our former opinion in this case. As we explained:

> "Thus, to overcome the presumption in favor of father under ORS 109.119(2)(a) (1997), grandparents must establish that the evidence as a whole preponderates in their favor, that is, that father cannot or will not provide adequate love and care for the children or that placement of the children in father's custody will cause them undue physical or psychological harm. Said another way, for a nonparent to prevail on those issues, the weight of the evidence in favor of the nonparent, when considered in light of the evidence in favor of the parent, must be such as to overcome the weight of the presumption. That means that the court must find by a preponderance of the evidence either that the parent cannot or will not provide adequate love and care or that the children will face an undue risk of physical or psychological harm in the parent's custody. We review the evidence in this case to determine whether grandparents have met that standard. In doing so, we do not balance the benefits to the children of being in father's custody against the benefits of being in grandparents' custody; rather, we determine whether the children would receive inadequate parenting or would suffer undue harm in father's custody."

*O'Donnell-Lamont and Lamont,* 184 Or App 249, 256-57, 56 P3d 929 (2002). Based on the reasoning in our former opinion, the statute could not be applied to deny father custody of his children because grandparents have not rebutted the constitutional presumption in his favor. Thus, there is no reason to apply ORS 109.119 (2001) on reconsideration because we have already determined the legally required result.

I respectfully dissent.

Landau, Linder, and Brewer, JJ., join in this dissent.

**LANDAU, J.,** concurring in part, dissenting in part.

I agree that the 2001 amendments to ORS 109.119 apply to this case. Where I part company with the lead opinion is its decision to apply those amendments to this case for

the first time on appeal without remanding to give the parties an opportunity to develop a record that addresses the requirements of the new law. In my view, we should remand the case to the trial court if not out of considerations of due process then at least out of considerations of basic fairness.

In *Jones v. General Motors Corp.*, 139 Or App 244, 264, 911 P2d 1243 (1996), *aff'd on other grounds*, 325 Or 404, 939 P2d 608 (1997), we declined to apply for the first time on appeal amendments to the summary judgment standard provided in ORCP 47 C. We explained that "[t]he goal posts have moved. * * * Due process requires that plaintiff be given an opportunity * * * to meet the new evidentiary burdens imposed by the amendment * * *." 139 Or App at 264; *see also State v. Meyers*, 153 Or App 551, 559-60, 958 P2d 187 (1998) (declining to apply new evidentiary standard for first time on appeal because "[s]uch a moving of the proverbial goal posts after the contest is over raises serious questions of due process"). In this case, the goal posts certainly have moved from the time that this case was tried. At the time this case was tried, the United States Supreme Court had not even issued its decision in *Troxel v. Granville*, 530 US 57, 120 S Ct 2054, 147 L Ed 2d 49 (2000), and the 2001 amendments to ORS 109.119 were still a year off. Under *Jones*, it strikes me that we have an obligation to remand the case.

Having said that, I will confess that I am not certain that *Jones* was correct in asserting that a remand in such circumstances is required as a matter of federal due process principles. I am not aware of any United States Supreme Court decision holding that the retroactive application of a nonpenal statute violates the Due Process Clause of the Fourteenth Amendment. Moreover, even if *Jones* is correct in the abstract, it is not clear that it would apply in a case such as this, in which it could be argued that grandparents do not have the sort of liberty interest that triggers due process procedural protections. *See, e.g., Graham v. Children Services Division*, 39 Or App 27, 30-34, 591 P2d 375, *rev den*, 286 Or 521 (1979) ("grandparents have no liberty interest * * * and no rights superior to a nonrelative applying for permission to adopt").

Even if federal due process principles do not require a remand, however, we have discretion to remand based on considerations of basic fairness. In that regard, I note that it is not uncommon for the Oregon Supreme Court to remand domestic relations cases for taking additional evidence after the court announces a new principle of law or when it merely finds a record inadequate. In *Massee and Massee*, 328 Or 195, 970 P2d 1203 (1999), for example, the Supreme Court determined that the presumption of equal contribution to marital assets applies to the appreciation of assets that one spouse brings into the marriage. The question then arose whether the husband in that case actually had rebutted the presumption. In that regard, the court noted that the record was less than adequate, particularly with respect to the wife's contributions as a homemaker. The court explained that it could resolve the case simply by ruling *de novo* on the record before it or by remanding it to the Court of Appeals to do the same. But the court rejected both of those approaches, explaining:

> "The record in this case lacks evidence on several important facts, including husband's net worth at the time of marriage and at the time of dissolution, which likely will influence, if not control, any ultimate property division after remand. Resolution of this case thus requires further development of the factual record. Consequently, we remand the case to the trial court for the taking of additional evidence and reconsideration in light of this opinion."

*Id.* at 209.

Similarly—and closer to home—in *State ex rel Juv. Dept. v. Lauffenberger*, 308 Or 159, 777 P2d 954 (1989), the Supreme Court addressed whether the juvenile court erred in applying a "best interests of the child" standard in deciding whether to place a child with the father or with third parties. During the pendency of the appeal, the court issued its decision in *Hruby and Hruby*, 304 Or 500, 510, 748 P2d 57 (1987), in which it held that, in private custody disputes, in the absence of a "compelling reason" for placing a child with another person, the natural parents have the right to the care and custody of the child. In *Lauffenberger*, the court then held that the "compelling reason" standard announced in *Hruby* also applied to juvenile court custody decisions. *Lauffenberger*, 308 Or at 164-66. The court did not simply

review the juvenile court's decision in light of the new standard, however. It remanded to the juvenile court to develop the record under the standard required by *Hruby:*

> "Deciding the case before *Hruby*, the [juvenile] court made no specific findings with respect to potential harm from parental custody that *Hruby* called for in ordinary private custody disputes nor with respect to any other factors that might play a role under the juvenile court statute. * * *
>
> "Under the circumstances, * * * we do not order a change of custody. That will be for the circuit court to decide on remand and on a new and more complete record, if the father still desires custody."

*Lauffenberger*, 308 Or at 167-68.

In light of decisions such as *Massee* and *Lauffenberger*, I see no reason, as a matter of simple fairness, not to give the parties to this case an opportunity to develop a record that responds to the changes in the law that have occurred since the original trial. As I have noted, when this case was tried, *Troxel* had not yet been decided. By the time the trial court issued its letter opinion, the decision had been issued, and the court even mentioned the case in two footnotes. But the fact remains that the parties did not have the opportunity to develop a record that directly responds to the presumption that the *Troxel* decision established.

Even assuming that *Troxel* was fairly before the parties at trial, the fact remains that the legislature did not enact the amendments to the statute that the lead opinion now applies until a year later. Thus, in this case, the lead opinion reverses the trial court because the record that the grandparents developed at trial failed to satisfy a statutory standard that did not even exist at the time. To me, that is fundamentally unfair.

I suppose that it could be argued that, if the statute merely "codifies" the *Troxel* decision, the parties would be in no position to complain that they could not have adequately developed the record. But the argument rests on an assumption that the statute has such a limited effect. That assumption is debatable, to say the least. And we have not yet had occasion to decide the matter. Indeed, to determine whether

the assumption is well founded would require us, among other things, to interpret the new statute, determine its constitutionality, address the standard of proof that it prescribes, and articulate its relationship to *Troxel*—all that simply to decide whether to remand the case. It strikes me that the better use of our resources is to address those questions as they arise, and are briefed, in concrete cases.

The lead opinion acknowledges that there has been a change in the legal standard during the course of this case but insists that there is no reason to remand for essentially two reasons.

First, the lead opinion complains that grandparents failed to request the trial court to reopen the record when *Troxel* first was published. Grandparents prevailed at trial, however. Under those circumstances, it is not clear to me why it was incumbent on grandparents to seek to reopen the record. In any event, the legislature did not amend ORS 109.119 until a year later, long after any party could have asked the trial court to reopen the record. It is that new statute that the lead opinion invokes in reaching its decision in this case.

Second, the lead opinion complains that grandparents do not identify the specific evidence that they wish to add to the record. That is true enough, but of little consequence. In *Massee* and *Lauffenberger*, the parties did not even request remands, and the Supreme Court gave no indication that such requests are necessary, much less that parties are required to identify the evidence that needs to be added to the record. In this case, grandparents have made clear that they were not given an opportunity to develop a record with the criteria of the amended statute in mind and wish to be given that opportunity. That seems sufficient to me. Indeed, given the fact that this was such a close case, and given the importance of credibility in evaluating the record, it strikes me that a remand would be appropriate even without the need for additional evidence.

The concurrence similarly argues that a party seeking a remand must identify the sort of evidence he or she would offer on remand. I am aware of no case imposing such

a requirement, and, as I have noted, *Massee* and *Lauffenberger* appear to be quite to the contrary.

In short, we should not decide cases on the basis of standards that did not even exist at the time of trial. We should remand this case as grandparents request so that they may develop a record that responds to *Troxel* and to the specific demands of the 2001 amendments to ORS 109.119.

Deits, C. J., and Linder, Wollheim, and Brewer, JJ., join in this opinion.