MOORE, Judge.
Athenia Clark Tanner Weldon (“the mother”) appeals from a judgment declaring that the Grandparent Visitation Act (“the GVA”), Ala.Code 1975, § 30-3-4.1, is not unconstitutional, thereby denying her counterclaim against Linda Ballow (“the grandmother”). We reverse the judgment.

Background

On March 28, 2014, the grandmother filed a petition in the Autauga Circuit Court (“the trial court”) seeking visitation with R.C.T. and R.E.T., the children born of the mother’s marriage to the grandmother’s son, Carl Allen Tanner, Jr. (“the father”), pursuant to the GVA.[1] The *657 grandmother attached to the petition her affidavit in which she attested to having assumed some of the care-taking responsibilities for the children and to having developed a significant emotional relationship with the children both before and after the father died in 2008; she also attached the affidavit of her husband in which he attested that, following the death of the father, and particularly after the mother began- a relationship with Glen Weldon, who she eventually married, the mother restricted interaction between the grandmother and the children, ultimately disallowing visitation between the children and the grandmother altogether. On May 26, 2014, the mother filed an answer and a counterclaim seeking a judgment declaring the GVA facially unconstitutional, which counterclaim the mother amended on June 5, 2014. The mother served Luther Strange, the Attorney General for the State of Alabama, with a copy of her counterclaim. See Ala.Code 1975, § 6-6-227 (“[I]f the statute, ordinance, or franchise is alleged to be unconstitutional, the Attorney General of the State shall also be served with a copy of the proceeding and be entitled to be heard.”). On May 27, 2014, the grandmother filed a reply to the mother’s counterclaim. On September 23, 2014, the attorney general filed a notice of appearance to defend the constitutionality of the GVA. The attorney general filed a reply to the mother’s counterclaim on November 5, 2014.[2]
On February 10, 2015, after receiving briefs from the parties and hearing arguments of counsel, the trial court entered an order denying the mother’s counterclaim. In that order, the trial court certified that “the judgment should be entered and there is no just reason for delay” and that “this judgment is final pursuant to Ala. R. Civ. P.[, Rule] 54(b).” The mother filed her notice of appeal on March 9, 2015.

Finality of the Judgment

Before proceeding on the merits, we must first ascertain whether the trial court properly certified its February 10, 2015, order as a final judgment under Rule 54(b), Ala. R. Civ. P. That rule provides, in pertinent part:
“When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.”
The trial court complied with the rule by directing “that this judgment should be entered and that there is no just reason for delay.” See Sho-Me Motor Lodges, Inc. v. Jehle-Slauson Constr. Co., 466 So.2d 83 (Ala.1985). However, a trial court’s certification “does not ipso facto make the order appealable.” 2 Champ Lyons, Jr., and Ally Windsor Howell, Alabama Rules of Civil Procedure Annotated, Rule 54, § 54.3, p.,154 (4th ed.2004). This court must still determine whether, as a matter of law,, a single claim has-been completely adjudicated and whether the *658 trial court exceeded its discretion in finding no just reason for delay. Id.
In her counterclaim, the mother sought a judgment declaring that the GVA is facially unconstitutional. In 1568 Montgomery Highway, Inc. v. City of Hoover, 45 So.3d 319 (Ala.2010), a municipality commenced an action against a store operator seeking a judgment declaring that the store operator had violated a state statute that had been incorporated into a local ordinance restricting the location of “adults-only enterprises.” The store operator filed a counterclaim challenging the constitutionality of the statute and the ordinance. 45 So.3d at 321-22. Both the trial court and our supreme court treated the counterclaim not as a mere defense to the action filed by the municipality, but as a separate claim altogether. In Alabama Disposal Solutions-Landfill, L.L.C. v. Town of Lowndesboro, 837 So.2d 292 (Ala.Civ.App.2002), a landfill operator and a county filed a declaratory-judgment .action against a town seeking to have a municipal ordinance prohibiting the operation of a landfill within the town’s limits declared void and unconstitutional. The town filed a counterclaim alleging that the county’s contract with the landfill operator was invalid. This court treated the counterclaim as a separate claim. 837 So.2d at 299. By analogy, the counterclaim filed by the mother in this case is properly considered a separate claim, which was fully adjudicated when it was denied in the trial court’s order. See also Curtiss-Wright Corp. v. General Elec. Co., 446 U.S. 1, 9, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980) (“[Counterclaims, whether compulsory or permissive, present no special problems for Rule 54(b) determinations; counterclaims are not to be evaluated differently from other claims.”).
The trial court certified that “there is no just reason for delay” without specifying its reasoning. See Schneider Nat’l Carriers, Inc. v. Tinney, 776 So.2d 753 (Ala.2000) (holding that trial court certifying order as a final judgment need not detail its justification for finding no just reason for delay). In Lighting Fair, Inc. v. Rosenberg, 63 So.3d 1256 (Ala.2010), our supreme court adopted the five-factor analysis originally set out -in Allis-Chalmers Corp. v. Philadelphia Electric Co., 521 F.2d 360 (3d Cir.1975), overruled on other grounds by Curtiss-Wright Corp. v. General Electric Co., supra, for courts to use when determining whether “there is no just reason for delay”; those factors are:
“(1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need, for review might or might not be mooted by future developments in the [trial] court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in a set-off against ‘the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.”
Allis-Chalmers Corp., 521 F.2d at 364 (footnotes omitted). After considering those factors, we conclude that the trial court did not exceed its discretion in certifying the order ás final and, thus, appropriate for immediate appeal.
The appellate courts of this State most often reject a Rule 54(b) certification “if the issues in the claim being, certified and a claim that will remain pending in the trial court “are so closely intertwined that separate adjudication would pose an unreasonable risk of inconsistent results.” ’ ” Schlarb v. Lee, 955 So.2d 418, 419-20 (Ala. *659 2006) (quoting Clarke-Mobile Counties Gas Dist. v. Prior Energy Corp., 834 So.2d 88, 95 (Ala.2002), quoting in turn Branch v. SouthTrust Bank of Dothan, N.A., 514 So.2d 1373, 1374 (Ala.1987)). In this case, the only claim still pending in the trial court is the claim by the grandmother for visitation with the children. ' In ruling on that claim, the trial court would have no occasion to reconsider the facial constitutionality of the GVA or to render a judgment that would be inconsistent with its determination that the GVA is facially constitutional. Its decision to award or to deny the grandmother visitation would depend solely on the application of the GVA, and, if the trial court misapplied the law, any claim arising from that misapplication would be separate and distinct from the claim that the GVA is facially unconstitutional. See State v. Adams, 91 So.3d 724, 754 (Ala.Crim.App.2010) (explaining the difference between an “as applied” constitutional challenge to a statute, which is based on the facts of a particular case, and a “facial” constitutional challenge to a statute, which is based on whether the statute is always unconstitutional, regardless of the particular facts). Hence, we find no risk of inconsistent results from a separate adjudication of the grandmother’s visitation claim. Likewise, we cannot conceive of any ruling on the grandmother’s claim that would cause this court to review a second time the issue whether the GVA is facially unconstitutional.
If the trial court denies the grandmother’s pending petition, the' grandmother would not be allowed to visit with the children over the mother’s objection. However, that denial would not moot the mother’s appeal. The mother has consistently argued throughout these proceedings that the GVA unconstitutionally deprives custodial parents of due process by, among other reasons, forcing them into litigation over their parental decisions regarding grandparent visitation. The mother maintains that the GVA
“requires fit parents to be drawn into court, to incur legal expenses, and to defend against their fundamental right to make decisions concerning their children; and puts fit parents in the same category as sex offenders and other classes of people against whom the state does have a compelling interest to protect children.”
Even if the trial court ultimately denies the grandmother’s petition, that alleged damage cannot be undone. See Conlogue v. Conlogue, 890 A.2d 691, 696-97 (Me.2006) (holding that being forced to litigate a grandparent-visitation claim itself constitutes an infringement of a parent’s fundamental rights). Any disposition of the grandmother’s claim below will not moot the mother’s constitutional challenge to the GVA. On the other hand, if this court decides that the GVA is facially unconstitutional, that disposition would effectively end any further trial-court proceedings.
We further conclude that practical considerations militate in favor of immediate appellate review. The facial constitutionality of the GVA can be determined based solely on legal arguments without consideration of any facts an evidentiary hearing might produce. See State v. Adams, supra. The mother’s counterclaim, consisting of her primary legal challenge to the grandmother’s petition, can be completely and finally resolved without further protracted litigation and the expenses associated therewith. Moreover, we note that this appeal involves an important issue of child custody, which should be decided as expeditiously as possible. See generally Ex parte T.C., 96 So.3d 123, 129 (Ala.2012) (“[I]n. resolving issues involving juveniles, time is of the essence.”). The grandmother filed her petition on March 28, 2014, when the children at issue were 11 and 9 *660 years old, respectively; they are now 13 and 11 years old. It cannot further the children’s best interests for this court to delay any longer a .ruling on the facial constitutionality of the GVA.

Standard of Review

In its judgment, the trial court ruled only that the GVA is not unconstitutional. The trial court has not yet applied the GVA to award the grandmother any visitation with the children. The mother challenges the judgment solely on the terms of “the [GVA] itself, the United States Constitution, and the decisions regarding the [GVA] as a matter of law.” In other words, she asserts a facial challenge to the GVA. A facial challenge is ‘“[a] claim that a statute is unconstitutional on its face — that is, that it always operates unconstitutionally.’” Board of Water & Sewer Comm’rs of the City of Mobile v. Hunter, 956 So.2d 403, 419 (Ala.2006) (quoting Black’s Law Dictionary 244 (8th ed.2004)), superseded by statute on other grounds, Arthur v. Bolen, 41 So.3d 745 (Ala.2010). “Our review of constitutional challenges to legislative enactments is de novo.” Richards v. Izzi, 819 So.2d 25, 29 n. 3 (Ala.2001). When an appeal concerns only questions of law, “there is no presumption of correctness in favor of the trial court’s judgment....” Morgan Bldg. & Spas, Inc. v. Gillett, 762 So.2d 366, 368 (Ala.Civ.App.2000)). See also Burnett v. Burnett, 88 So.3d 887, 888 (Ala.Civ.App.2011).
Acts of the legislature are presumed constitutional. State v. Alabama Mun. Ins. Corp., 730 So.2d 107, 110 (Ala.1998).
“In reviewing the constitutionality of a legislative act, this Court will sustain the act ‘“unless it is clear beyond reasonable doubt that it is violative of the fundamental law.”’ White v. Reynolds Metals Co., 558 So.2d 373, 383 (Ala.1989) (quoting Alabama State Fed’n of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815 (1944)). All presumptions are indulged in favor of the validity of the act. House v. Cullman County, 593 So.2d 69 (Ala.1992).”
Dobbs v. Shelby Cnty. Econ. & Indus. Dev. Auth., 749 So.2d 425, 428 (Ala.1999). “Moreover, in order to overcome the presumption of constitutionality, ... the party asserting the unconstitutionality of the Act[ ] bears the burden ‘to show that [the Act] is not constitutional.’” State ex rel. King v. Morton, 955 So.2d 1012, 1017 (Ala.2006) (quoting Board of Trs. of Employees’ Retirement Sys. of the City of Montgomery v. Talley, 291 Ala. 307, 310, 280 So.2d 553, 556 (1973)).

Analysis

I. The Constitutionality of Former § SOS-I.!
In Ex parte E.R.G., 73 So.3d 634 (Ala.2011) (plurality opinion), our supreme court invalidated former § 30-3-4.1(d), Ala.Code 1975, as an unconstitutional infringement on the fundamental due-process rights of parents. At that time, § 30-3-4.1(d) provided:
“Upon the filing of an original action or upon intervention in an existing proceeding pursuant to subsections (b) and (c), the court shall determine if visitation by the grandparent is in the best interests of the child. Visitation shall not be granted if the visitation would endanger the physical health of the child or impair the emotional development of the child. In determining the best interests of the child, the court shall consider the following:
“(1) The willingness of the grandparent or grandparents to encourage a close relationship between the child and the parent or parents.
*661 “(2) The preference of the child, if the child is determined to be of sufficient maturity to express a preference.
“(3) The mental and physical health of the child.
“(4) The mental and physical health of the grandparent or grandparents.
“(5) Evidence of domestic violence inflicted by one parent upon the other parent or the child. If, the court determines that evidence of domestic violence exists, visitation provisions shall be made in a manner protecting the child or children, parents, or grandparents from further abuse.
“(6) Other relevant factors in the particular circumstances, including the wishes of any parent who is living.”
A majority of the court determined that § 30-3-^4.1(d) could not be constitutionally applied in any circumstances, thus rendering the entirety of former § 30-3-4.1 ineffective, 73 So.3d at 648-50, but the Justices differed on their reasoning.
The main opinion, which was authored by Justice Parker, concluded that former § 30-3-4.1 infringed on the fundamental rights of parents to make decisions regarding their children’s companions. Relying on the main opinion in Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (plurality opinion), which was authored by Justice O’Connor, the main opinion in Ex parte E.R.G. stated:
“In this context, therefore, the Constitution requires that a prior and independent finding of parental unfitness must be made before the court may proceed to the question whether an order disturbing a parent’s ‘care, custody, and control’ of his or her child is in that child’s best interests.
“The state’s compelling interest is limited to overruling the decisions of unfit parents. As the United States Supreme Court said in Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), it is only ‘[a]fter the State has established parental unfitness at that initial proceeding, [that] the court may assume at the dispositional stage that the interests of the child and the natural parents do diverge.’ 455 U.S. at 760, 102 S.Ct. 1388. Unless the parents are shown by clean and convincing evidence to be unfit, the state’s interest is not compelling: ‘[T]he State registers no gain towards its declared goals when it separates children from the custody of fit parents.’ Stanley v. Illinois, 405 U.S. 645, 652, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). All ‘parents are constitutionally entitled to a hearing on their fitness before their children are removed from'their custody.’ 405 U.S. at 658, 92 S.Ct. 1208. In the absence of clear and convincing proof that a parent is unfit, the state’s basis for intervention through the judicial system evaporates. ‘The State’s interest in caring for the children is “de minimis ” if the father is in fact a fit parent.’ Quilloin v. Walcott, 434 U.S. 246, 248, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978).”
73 So.3d at 644. The main opinion further stated:
“Because parents are presumed to act in the best interests of their children, the law also presumes parental ‘care, custody, and control’ to be superior to that of third persons under ordinary circumstances —
[[Image here]]
“... That same presumption is applicable to cases involving visitation with nonparents.”
73 So.3d at 644-45. Former § 30-3-4.1(d) did not expressly incorporate any presumption in favor of parental decisions as *662 to grandparent visitation but, rather, authorized courts to independently decide whether grandparent visitation should be awarded based on the best interests of the child.
“Those interests are incredibly important, to be sure, but, absent more, they do not rise to the level of a compelling state interest. Furthermore, application of a best-interests standard substitutes the judge for the parent as the decision-maker, without regard for parental rights, again without a compelling interest. Because no compelling interest is required by the Act and because there is no showing that application of the Act is the least restrictive means of achieving any state interest, the Act violates a parent’s fundamental right.

a

“There is no evidence in this case, however, indicating that the State has a compelling interest in forcing interaction between the grandparents and the grandchildren over the objections of the parents. And even if such a case were before us — i.e., a case showing such a compelling state interest — the Act applies in any case where the best interests of the child indicate that visitation with a grandparent might be appropriate, without any regard for the parents’ fundamental rights. This failure of the Act to include a presumption in favor of the parents when deciding questions of visitation infringes on the constitutional right of parents to direct the upbringing of their children, and the Act is therefore fatally flawed and unconstitutional.”
73 So.3d at 647-48 (footnote omitted). Justice Woodall and Justice Wise concurred in the main opinion,
Justice Murdock, concurring specially, agreed that former § 30-3-4.1(d) infringed
“on the ability of parents to make decisions as to the care, custody, and control of their children. Thus, as the main opinion reflects, a so7called ‘strict-scrutiny’ analysis applies. The State must show a compelling state interest and must also show that § 30-3-4.1 and any remedy flowing therefrom are narrowly tailored to address that compelling state interest.”
73 So.3d at 662 (Murdock, J., concurring specially). According to Justice Murdock, the United States Supreme Court’s decision in Troxel, although fractured by concurring opinions from Justice Souter, 530 U.S. at 75-79, and Justice Thomas, 530 U.S. at 80, and dissenting opinions from Justice Stevens, 530 U.S. at 80-91, Justice Scalia, 530 U.S. at 91-93, and Justice Kennedy, 530 U.S. at 93-102, “clearly expressed” that

“a showing merely of ‘best interests’ is not enough, ...

((

"... The Troxel Court then makes dear that the government cannot override a fit parent’s choices for his or her children merely because the government thinks it can make a ‘better decision’ than the parent as to what is in the child’s ‘best interests’ — ■
U < }

(Í

“... The notion that the state has a ‘compelling interest’ that empowers it to decide the ‘best interests’ of children is logically irreconcilable with the notion of a God-given and unalienable liberty interest, protected by the United States Constitution, in the right of parents to control the associations of their children.”
73 So.3d at 662-65 (Murdock, J„ concurring specially). In the absence of a compelling state interest to justify the usurpa *663 tion of the parental role of deciding the child’s best interests, Justice Murdock determined that former § 30-3-4.1. was, unconstitutional on its face. 73 So.3d at 672.
Justice Bolin concurred in the result, opining that former § 30-3-4.1 was unconstitutional because it failed to give the wishes of fit parents concerning requests for grandparent visitation “ ‘material’ and ‘substantial’ weight.” 73 So.3d at 675 (Bolin, J., concurring in the result). Justice Shaw, in a writing joined by Justice Stuart, also concurred in the result, finding former § 30-3-4.1 to be facially unconstitutional, noting that this court had made “laudable attempts” to save the constitutionality of the- act through statutory construction, see, e.g., E.H.G. v. E.R.G., 73 So.3d 614 (Ala.Civ.App.2010) (construing former § 30-3-4.1 as impliedly presuming parental decisions served best interests of child and requiring proof of harm to rebut that implied presumption), but that the legislature had unambiguously failed to incorporate the necessary presumption in favor of parents. 73 So.3d at 676-78 (Shaw, J., concurring in the result). Justice Main, in a writing joined by Chief Justice Cobb, dissented primarily on the ground that the government has a role in protecting children and that former § 30-3-4.1 constitutionally furthered that interest by allowing courts to decide whether a parent had disregarded his or her responsibility to allow grandparent visitation that served the child’s best interests. 73 So.3d at 678-85 (Main, J., dissenting).
II. The 2011 Amendments to § 30-3-4:1
Just one day before our supreme court issued its decision in Ex parte E.R.G., our governor approved two amendments to the GVA. See Ala. Acts 2011, Act Nos. 2011-539 and 2011-562 (approved June 9, 2011).[3] Those amendments became effective September I, 2011. See Ala. Acts 2011, Act No. 2011-539, § 2, and Ala. Acts 2011, Act No. 2011-562, § 2 (both providing that “[t]his act shall, become effective on the first day of the third month following its passage and approval by the Governor, or its otherwise becoming-law”). As a result of the 2011 amendments, the GVA now provides:
“(a) For the purposes of this section, the term ‘grandparent’ means the parent of a parent of a minor child, including an adopted child, the parent of a minor child’s parent who has died, or the parent of a minor child’s parent whose parental rights have been terminated when the child has been adopted pursuant to Seetion[s] 26-10A-27, 26-10A-28, or 26-10A-30, [Ala.Code 1975,] dealing with stepparent and relative adoption.
“(b) Except as otherwise provided in this section, a grandparent may file an original action for visitation rights to a minor child if it is in the best interest of the minor child and one of the following conditions exist:
“(1) One or both parents of the child are deceased.
“(2) The marriage of the parents of the child has been dissolved.
“(3) A parent of the child has abandoned the minor.
“(4) The child was born out of wedlock.
“(5) The child is living with one or both biological- or adoptive parents, who are still married to each other, whether or not there is a broken rela *664 tionship between either or both parents of the minor and the grandparent and either or both parents have used their parental authority to prohibit a relationship between the child and the grandparent. ■
“(c) Any grandparent may intervene in and seek to obtain visitation rights in any action when any court in this state has before it any question concerning the custody of a minor child, a divorce proceeding of the parents or a parent of the minor child, or a termination of the parental rights proceeding of either parent of the minor child, provided the termination of parental rights is for the purpose of adoption pursuant to Sections 26-10A-27, 26-10A-28, or 26-10A-30, dealing with stepparent or relative adoption. If the termination of parental rights is for the purpose of adoption, and the potential adoptive parent or parents are not stepparents or relatives, the grandparent may intervene in the action for the purpose of seeking to obtain visitation, provided that the grandparent has an . established relationship with the child. The right of the grandparent to seek visitation terminates if the court approves a petition for adoption by an adoptive parent who is not a stepparent or a biological relative of the child.
“(d) Upon the filing of an original action or upon intervention in an existing proceeding pursuant to subsections (b) and (c), the court shall determine if visitation by the grandparent is in the best interests of the child. Visitation shall not be granted if the visitation would endanger the physical health of the child or impair the emotional development of the child. If the child is living with one or both biological or adoptive parents, there shall be a rebuttable presumption for purposes , of this section that the parent or parents with whom the child is living know what is in the best interests of the child. In determining the best interests of the child, the court shall consider the following:
“(1) The willingness of the grandparent or grandparents to encourage a close relationship between the child and the parent or parents.
“(2) The preference of the child, if the child is determined to be of sufficient maturity to express a preference.
“(3) The mental and physical health of the child.
“(4) The mental and physical health of the grandparent or grandparents.
“(5) Evidence of domestic violence inflicted by one parent upon the other parent or the child. If the court determines that evidence of domestic violence exists, visitation provisions shall be made in a manner protecting the child or children, parents, or grandparents from further abuse.
“(6) If a parent has relinquished custody either voluntarily or by court order or if a parent has abandoned a child financially, whether the grandparent has an established relationship with the child.
“(7) The wishes of any parent who is living.
“(8) Other relevant factors in the particular circumstances.
“(e) The court shall make specific written findings of fact in support of its rulings. A grandparent who petitions for visitation may do so no more than once every 24 months. The fact that one grandparent has petitioned for visitation shall not preclude another grandparent from subsequently petitioning for visitation within the 24-month period. After visitation rights have been granted to any grandparent, the legal custodian, guardian, or parent of the child may *665 petition the court for revocation or amendment of the visitation rights, for good cause shown, which the court, in its discretion, may grant or deny. Unless evidence of abuse is alleged or other exceptional circumstances, a petition shall not be filed with respect to any one grandparent who has been granted visitation more than once in any two-year period. If more than one grandparent has successfully petitioned for visitation, the parent may petition no more than once every 24 months for revocation or amendment of visitation with respect to each order of visitation.
“(f) If the court finds that the grandparent or grandparents can bear the cost without unreasonable, financial hardship, the court, at the sole expense of the.petitioning grandparent or grandparents, may appoint a guardian ad li-tem for the minor child.
“(g) Notwithstanding the foregoing, a grandparent may not be granted visitation with a grandchild where the parent related to the grandparent has either given- up legal custody voluntarily or by court order or has abandoned the child financially unless the grandparent has an established relationship with the child and the court finds that visitation with the grandparent is in the best interests of the child.”
(Emphasis added.)
As emphasized above,' the GVA now expressly incorporates a rebuttable presumption that custodial parents know what is best for their child. In Ex parte E.R.G., Justices Parker, Woodall, Wise, Murdock, Bolin, Shaw, and Stuart all agreed that former § 30-3-4.1 violated parents’ due-process rights by not including such a presumption. The 2011 amendments address that deficiency. The mother nevertheless maintains that the 2011 amendments do not pass constitutional muster. Specifically, the mother contends that the GVA fails to require a threshold showing of the unfitness of a custodial parent before a court may order grandparent visitation. • The mother argues that, without expressly incorporating that requirement, or specifying that the presumption in favor of the custodial parent’s decision may be overcome only by a determination of parental unfitness, the GVA unconstitutionally continues to allow a court to override parental-decisions based on its own determination of the best interests of the child in the absence of any compelling state interest.
We begin by observing that the rebutta-ble presumption contained in § 30-3-4.1(d) applies only to the decisions of custodial parents, i.e., a .parent or parents with whom the child or children at issue are residing. The presumption does not apply to the decisions - of a parent or parents who, for whatever reason, do not have physical custody of the child or children at issue. Additionally, we note that § 30-3-4.1(d) mandates that a trial court deciding whether to order grandparent visitation presume that the custodial parent or parents “know what-is,in the best interests of the child.” We interpret that phrase to mean that the court should presume that the decision made by the custodial parent or parents concerning grandparent visitation serves the best interests of the child.
We agree with the mother that § 30-3-4.1(d) does not require a'trial court to make a preliminary determination of the unfitness of a custodial parent or parents before proceeding to inquire as to whether grandparent visitation is in the best interests of the child. Section 30-3-4.1(d) specifically provides: “Upon the filing of an original action' ... the court shall determine if visitation by the grandparent is in the best interests of the child.” As-part of that inquiry, the court can consider wheth *666 er a parent has abandoned the child or voluntarily relinquished custody of the child, see § 30-3-4.1(d)(6), but the GVA does not mention any procedure to assess the fitness of a custodial parent or expressly provide that a court must make an initial determination of parental unfitness before adjudicating a petition for grandparent visitation against a custodial parent. As worded,-the GVA allows a court to proceed directly to a best-interests inquiry without first adjudicating the unfitness of a custodial parent.
The distinction between the two inquiries cannot be overemphasized. Traditionally, and still today, a fit parent cannot involuntarily lose custodial rights in favor of a nonparent based solely on the best interests of the child. See T.S. v. J.P., 674 So.2d 535 (Ala.Civ.App.1995). In the absence of voluntary forfeiture of custody by the parent, before a court may award custody of a child to a nonparent, the law requires clear and convincing evidence of the unfitness of the parent, Ex parte Terry, 494 So.2d 628, 632 Ala. 1986), or the dependency of the child. See Ala.Code 1975, § 12-15-301 et seq. Although it may be in the best interests of a child to be in the custody of a nonparent, no court can transfer custody of a child to a nonpar-ent without first finding that the child’s parent is unfit. See Quilloin v. Walcott, 434 U.S. 246, 255, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978) (“We have little doubt that the Due Process Clause would be offended ‘[i]f a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness and for the sole reason that to do so was thought to be in the children’s best interest.’ ” (quoting Smith v. Organization of Foster Families, 431 U.S. 816, 862-63, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977) (Stewart, J., concurring in the judgment)). As Justice Parker and Justice Murdock thoroughly explained in their opinions concurring specially in Ex parte E.R.G., it is only after a finding of parental unfitness that a court can determine that a nonparent should have custody to serve the best interests of the child. See 73 So.3d at 656-58 (Parker, J., concurring specially), and 73 So.3d at 670-71 (Murdock, J., concurring specially).
The best-interests-of-the-child standard, on the other hand, applies to resolve custody disputes only between fit contestants. See Ex parte Devine, 398 So.2d 686 (Ala.1981). This court acknowledges that a best-interests inquiry encompasses consideration of “the characteristics of those seeking custody, including age, character, stability, mental and physical health [and] the capacity and interest of each parent to provide for the emotional, social, moral, material and educational needs of the children,” 398 So.2d at 696-97, all of which are factors relating to the fitness of a parent; however, the GVA still does not require a court to end its inquiry upon finding that a parent is fit to exercise custody of a child. Even if the court determines that the custodial- parent has the capacity to make reasoned decisions regarding grandparent visitation, the GVA mandates that a court “shall consider” the factors specified in § 30-3-4.1(d) to determine what is best for the child.
“The word ‘shall’ is clear and unambiguous and,is imperative and mandatory. Tuscaloosa County Comm’n v. Deputy Sheriffs’ Ass’n of Tuscaloosa [County, 589 So.2d 687 (Ala.1991)]; Taylor v. Cox, 710 So.2d 406 (Ala.1998).... The word ‘shall’ has been defined as follows:
“‘As used in statutes, contracts, or the like, this word is generally imperative or mandatory. In common or ordinary parlance, and in its ordinary signification, .the term “shall” is a word of command, and one which has *667 always or which must be given a compulsory meaning; as denoting obligation. The word in ordinary usage means “must” and is inconsistent with a concept of discretion.’
“Black’s Law Dictionary 1375 (6th ed. 199[0]).”
Ex parte Prudential Ins. Co. of America, 721 So.2d 1135, 1138 (Ala.1998). In this context, by using the word “shall,” our legislature intended that courts adjudicating a petition for grandparent visitation must decide the best interests of the child based on factors beyond just the capacity of the custodial parent or parents to make decisions for the benefit of the child. See Pinigis v. Regions Bank, 977 So.2d 446, 450-51 (Ala.2007) (holding that the polestar of statutory construction is legislative intent as gleaned from the unambiguous language employed in the statute).
We further agree with the mother that the presumption found in § 30-3-4.1(d) — • that custodial parents know what is best for their children — may be rebutted by a court’s own determination of the best interests of the child. “[Rjebuttable presumptions ... are those under which a certain quantum of evidence gives rise to an inference of some other fact, but as to which fact the opposing party may offer evidence in rebuttal.” Rule 301, Ala. R. Evid. (Advisory Committee’s Notes). In this instance, § 30-3-4.1(d) establishes that a court must infer from evidence that a custodial parent has made a decision as to grandparent visitation that the decision, whatever it may be, serves the best interests of the child. Section 30-3-4.1 then describes how that presumption shall be rebutted, namely, by a judicial determination based on- contradictory evidence presented by the grandparents that, in fact, the parental decision does not serve the best interests of the child. Section 30-3-4.1(d) specifically states that, when adjudicating a petition filed under the GVA, “the court” shall determine whether grandparent visitation serves the best interests of the child. Section 30-3-4.1(d) even sets out the guidelines the court should follow when making its independent judicial assessment of the best interests of the child. The GVA does not mandate any other criteria for a court to use when determining whether the statutory presumption has been rebutted. See Tripp v. Owens, 150 So.3d 208, 210 (Ala.Civ.App.2014) (holding that, in the absence of successful constitutional challenge to the GVA, grandparents are entitled to evidentiary hearing to prove that visitation serves the best interests of the child).
In summary, the 2011 amendments to the GVA provide a court with jurisdiction to resolve intergenerational family disputes regarding visitation between a child’s custodial parents and the child’s grandparents. In adjudicating that dispute, a court is not bound by the decision of the custodial parent or parents as to grandparent visitation. The court must presume that the custodial parent or parents have made decisions that serve the best interests of the child. However, that presumption may be overcome by the court’s own independent evaluation of the best interests of the child as guided by the factors set out in § 30-3-4.1(d). If a court finds grandparent visitation to. be in the best interests of the child, it may enter a visitation plan over the objection of a child’s custodial parent or parents in a binding judgment.
III. Facial Challenge to § 30-3-4.1
“A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid. The fact that [an] Act might operate unconstitutionally under some conceivable set of cireum- *668 stances is insufficient to render it wholly invalid.... ”
United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). In Linder v. Linder, 348 Ark. 322, 72 S.W.3d 841 (2002), the Arkansas Supreme Court rejected a facial constitutional challenge to Arkansas’s grandparent-visitation statute, Ark.Code Ann., § 9-13-103, because, it held, the statute could be constitutionally applied in a narrow category of cases in which a parent had forfeited or lost his or her fundamental parental rights. 348 Ark. at 349, 72 S.W.3d at 856. In Conlogue v. Conlogue, 890 A.2d at 693-94, the Maine Supreme Court also rejected a facial constitutional challenge to Maine’s grandparent-visitation statute, Me.Rev. Stat. Ann. tit. 19-A, § 1803, by holding that it could be applied constitutionally to cases in which the child at issue was not in the custody of his or her parents.
The mother complains exclusively that the GVA cannot be applied constitutionally to a custodial parent with fundamental rights; however, the GVA also covers situations in which a child would not be in the custody of a parent. For example, § 30-3^4.1 (b)(1) authorizes a grandparent to file a visitation petition when both parents are deceased; § 30 — 3—4.1(b)(3) authorizes an action when a child has been abandoned; and § 30 — 3—4.1(d)(6) implies that a grandparent may maintain á visitation action when the parents have relinquished custody of the child, either voluntarily or by court order. In all of those circumstances, the child would not be in the custody of a parent with fundamental rights to object to grandparent visitation. See Linder, supra; see also Ex parte E.R.G., 73 So.3d at 669 (Murdock, J., concurring specially) (arguing that the State has a compelling interest in protecting children who are subjected to harm by abandonment, unfitness, or dependency).
However, in limited circumstances, an entire statute may be rendered unconstitutional when only a part of that statute is constitutionally invalid. In Ex parte E.R.G., supra, the main opinion, after concluding that former § 30-3-4.1(d) violated the constitutional rights of custodial parents, explained:
“Nor can the Act be saved by simply striking subparagraph (d); that subpar-agraph alone provides a standard for a court to use in determining appropriate visitation, and, in its absence, the Act is no longer functional. Where an essential element of a statute is declared unconstitutional, the entire statute must be rejected:
“ ‘Under these well-established principles, the judiciary’s severability power extends only to those cases in which the invalid portions are “ ‘not so intertwined with the remaining portions that such remaining portions are rendered meaningless by the extirpation.’ ” Hamilton v. Autauga County, 289 Ala. 419, 426, 268 So.2d 30, 36 (1972) (quoting Allen v. Walker County, 281 Ala. 156, 162, 199 So.2d 854, 860 (1967)). " If they are' so intertwined, it must “ ‘be assumed that the legislature would not have passed the enactment thus rendered meaningless.’” Id. In such a case, the entire act must fall.’
“State ex rel. Jeffers v. Martin, 735 So.2d 1156, 1159 (Ala.1999). Because, in the absence of the operative portion— paragraph (d) — the Act cannot give sufficient guidance to the courts regarding visitation proceedings, we declare the entire Act unconstitutional and therefore unenforceable.”
73 So.3d at 648. The question for this court, therefore, is whether the 2011 amendments have effectively cured the constitutional errors that led a majority of *669 our supreme court to strike down not only ■former § 30-3-4.1(d), but the entirety of the former GVA.[4]
A. The Troxel Presumption
In Troxel, supra, Justice O’Connor pointed out that the common law presumed that a fit parent acts in the best interests of his or her children. 530 U.S. at 69-70. Justice O’Connor criticized the Washington state statute at issue because it did not “accord at least some special weight to the parent’s own determination.” 530 U.S. at 70. In Ex parte E.R.G., supra, a majority of the Justices of our supreme court agreed that former § 30 — 3—4.1(d) failed to incorporate the Troxel presumption. The 2011 amendments to § 30-3-4.1(d) require a trial court to presume that the parental decision as to grandparent visitation serves the best interests of the child and places the burden of proving otherwise bn the grandparent seeking visitation. In that regard, the 2011 amendments differentiate the GVA from the statute at issue in Troxel. Many state courts have considered the simple addition of those procedural and evidentiary safeguards as adequate to protect the fundamental rights of parents. See, e.g., McGovern v. McGovern, 201 Ariz. 172, 33 P.3d 506 (Ariz.Ct.App.2001); In re Marriage of Harris, 34 Cal.4th 210, 96 P.3d 141, 17 Cal.Rptr.3d 842 (2004); In re Adoption of C.A., 137 P.3d 318 (Colo.2006); Crafton v. Gibson, 752 N.E.2d 78 (Ind.Ct.App.2001); Walker v. Blair, 382 S.W.3d 862 (Ky.2012); Rogers v. Pastureau, 117 So.3d 517 (La.Ct.App.2013); Deem v. Lobato, 136 N.M. 266, 96 P.3d 1186 (2004); In re S.B., 845 N.W.2d 317 (N.D.2014); Harrold v. Collier, 107 Ohio St.3d 44, 836 N.E.2d 1165 (2005); Hiller v. Fausey, 588 Pa. 342, 904 A.2d 875 (2006); State ex rel. Brandon L. v. Moats, 209 W.Va. 752, 551 S.E.2d 674 (2001); and In re Paternity of Roger D.H., 250 Wis.2d 747, 641 N.W.2d 440 (Wis.Ct.App.2002).
However, those courts have overlooked that, although the plurality decision in Troxel did not explain the amount of weight a court should give to custodial parenting decisions, it very clearly stated that the presumption could not be overcome “simply because a state judge believes a ‘better’ decision could be made,” 530 U.S. at 73, and that a court cannot constitutionally overrule a custodial parent’s decision based on “nothing more than a simple disagreement between the [court] and [the custodial parent] concerning her children’s best interests.” 530 U.S. at 72. By enacting evidentiary presumptions and shifting the burden of proof, the 2011 amendments do not remove from the courts the power to award grandparent visitation based on the best interests of the child. As this court explained in E.H.G.:
“By applying a presumption that a parent’s decision regarding grandparent visitation serves the best interests of the child, and by requiring grandparents to overcome that presumption by proving ... that grandparent visitation is in the best interests of the child, the court may alter procedural law, but it does not *670 change the applicable substantive standard.” •
73 So.3d at 623. Under the 2011 amendments, a court can still award grandparent visitation over the objection of a custodial parent if the court decides that it is in the best interests of the child. The GVA, as amended, continues to invade the fundamental rights of parents to make their own determinations as to the best interests of their children.
B. The Unfitness Standard
Many state courts have concluded that the traditional fundamental rights of parents to independently decide questions regarding grandparent visitation can be overcome only by the most urgent of reasons. See Conlogue, supra. Indeed, the Washington Supreme Court, whose decision the United States Supreme Court reviewed in Troxel, ultimately determined that due process requires a grandparent to prove that the parental decision will harm the child before a court can order grandparent visitation. In re Parentage of C.A.M.A., 154 Wash.2d 52, 109 P.3d 405 (2005). Many states agree with that constitutional standard. See Ross v. Bauman, 353 P.3d 816 (Alaska 2015) (grandparent must show detriment to child); Linder, supra; Roth v. Weston, 259 Conn. 202, 789 A.2d 431 (2002); Sullivan v. Sapp, 866 So.2d 28 (Fla.2004); Clark v. Wade, 273 Ga. 587, 544 S.E.2d 99 (2001); Doe v. Doe, 116 Hawai'i 323, 172 P.3d 1067 (2007); Blixt v. Blixt, 437 Mass. 649, 774 N.E.2d 1052 (2002); DeRose v. DeRose, 469 Mich. 320, 666 N.W.2d 636 (2003); Moriarty v. Bradt, 177 N.J. 84, 827 A.2d 203 (2003); Neal v. Lee, 14 P.3d 547 (Okla.2000); Hawk v. Hawk, 855 S.W.2d 573 (Tenn.1993); and Jones v. Jones, 307 P.3d 598 (Utah Ct.App.2013). Other states phrase that standard in a different way by requiring a threshold showing of parental unfitness. See, e.g., In re Marriage of Howard, 661 N.W.2d 183 (Iowa 2003); Koshko v. Haining, 398 Md. 404, 921 A.2d 171 (2007) (requiring proof of “exceptional circumstances” such as unfitness of parent or deleterious effect on child); Williamson v. Hunt, 183 Or.App. 339, 51 P.3d 694 (2002), abrogated on other grounds, In re Marriage of O'Donnell-Lamont, 187 Or.App. 14, 67 P.3d 939 (2003); Camburn v. Smith, 355 S.C. 574, 586 S.E.2d 565 (2003); and Glidden v. Conley, 175 Vt. 111, 820 A.2d 197 (2003). Some states have even implemented special pleading rules so that parents will be subjected to litigation only when grandparents specifically allege facts supporting their claims of parental unfitness, harm to the child, or other exceptional circumstances. See, e.g., Conlogue, supra Those standards appear to conform to the few exceptions to the common-law rule prohibiting court-ordered grandparent visitation. See Patricia S. Fernandez, Grandparent Access: A Model Statute, 6 Yale L. & Pol’y Rev. 109, 114 (1988) (citing cases allowing for grandparent visitation “when the custodial parent was unfit, when the parent had abandoned the child, when the grandparent had been a primary caretaker, or when a stipulation expressly accorded the grandparents a right to visitation” (footnotes omitted)).
Relying primarily on the main opinion in Ex parte E.R.G., 73 So.3d at 644 (quoted at length, supra), the mother argues that the interests of the State become compelling enough to justify intervention in child-visitation disputes between a custodial parent and a grandparent when the custodial parent has become unfit to properly care for the child. After carefully reviewing the plurality opinion authored by Justice Parker, we do not agree with the mother that a majority of our supreme court joined that aspect of the main opinion. Justice Wise and Justice Woodall concurred in the main opinion, without .writ *671 ing. Justice Murdock concurred specially, opining that the State has a compelling interest in protecting children from harm, which allows the State to provide for grandparent visitation when a parent has voluntary forfeited custody rights,[5] has become unfit, or has rendered a child dependent.[6] 73 So.3d at 669. The remaining Justices who agreed that former § 30-3-4.1 violated the due-process rights of custodial parents apparently determined that they did not have to decide whether a prerequisite finding of unfitness would be required to validate the statute.
We, likewise, find no need to decide that point. Without resolving the question of the correct constitutional standard, we are clear that the GVA applies the wrong standard in authorizing a court to override the decision of a custodial parent regarding grandparent visitation based solely on its determination of the best interests of the child.
“A proceeding that may result in a court mandating that a parent’s children spend time with a third party, outside of the parent’s supervision and against the parent’s wishes, no matter how temporary or modifiable, necessitates stronger protections of the parental right. The importance of parental autonomy is too great and our reluctance to interfere with the private matters of the family too foreboding, ... whether it be in matters of custody or visitation, to allow parental decision-making to remain that vulnerable to frustration by third parties.
[[Image here]]
“The facial provisions of [Md.Code Ann., Fam. Law § 9-102, Maryland’s grandparent-visitation statute,] require merely' a ‘non-constitutional’ best interests of the child inquiry. Id. We already have shown that this standard, which is the proper crucible for resolving disputes between fit parents, is inadequate, by itself, to protect the vital liberty interests implicated in disputes between fit parents and third parties over the upbringing of children.”
Koshko, 398 Md. at 439-40, 921 A.2d at 192. The GVA does not require proof of any additional factors other than “the best interests of the child” to overcome the presumption in favor of a custodial parent’s decision, and we are not at liberty to engraft such factors into the law. See Ex parte E.R.G., 73 So.3d at 649-50.
G. Severability
The 2011 amendments to § 30-3-4.1 incorporate the Troxel presumption, but those amendments do not establish an adequate standard for overcoming that presumption, merely perpetuating the old best-interests-of-the-child standard that offends the due-process rights of custodial parents. Accordingly, we \ conclude that § 30-3-4.1(d) remains constitutionally infirm. Because subsection (d) continues to be the sole operative provision regulating how courts shall decide grandparent-visitation petitions, the remainder of the GVA cannot effectively function without it. Thus, as our supreme court did in Ex parte E.R.G., supra, we conclude that the entire GVA is facially unconstitutional.

*672
Conclusion

For millennia, Western tradition has conferred custody of children upon their parents upon the theory that divine providence and the forces of nature delivered the child to those whose shared kinship with the child would instinctively lead them above all others to altruistically protect and raise the child. See, e.g., Aristotle, Politics, Book I, ch. XIII, 33-34 (Ernest Barker trans., Oxford Univ. Press 1962); Thomas Aquinas, Summa Contra Gentiles (Vernon J. Bourke trans., Univ. of Notre Dame Press 1975) (c. 1264). That theory has passed into modem law, which presumes that a custodial parent is fit and acts in the best ’ interests of his or her child. See T.J. v. Calhoun Cnty. Dep’t of Human Res., 116 So.3d 1168, 1175 (Ala.Civ.App.2013) (plurality opinion) (citing Griggs v. Barnes, 262 Ala. 357, 78 So.2d 910 (1955)). Based on that longstanding tradition, a custodial parent has a fundamental right to decide how grandparent visitation serves the best interests of his, or her child. Troxel, supra. An Alabama court may not deprive a custodial parent of that fundamental right based on its own determination of the best interests of the child. , Id. Section 30-3-4.1(d) deprives custodial parents of due process by imper-missibly authorizing unconstitutional judicial review of parental decisions regarding grandparent visitation based on the best interests of the child. Thus, that subsection, and by extension the entirety of the GVA, is facially unconstitutional. We therefore reverse the trial court’s judgment declaring the GVA constitutional and remand the case to the trial court with instructions that it vacate its judgment and that it dismiss the grandmother’s petition.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMAS, J., concurs.
THOMPSON, P.J., and DONALDSON, J., concur in the rationale in part and concur in the result, with writings.
PITTMAN, J., concurs in part and dissents in part, with writing.

. The petition originally named Thomas Bal-low, Jr., the grandmother’s husband, as a *657 plaintiff, and, in an amended petition, Glen Weldon, the mother’s husband, was added as a defendant. The trial court entered an order dismissing both men as parties on February 10, 2015.

. The grandmother filed an amendment to her petition on January 15, 2015, in which she asserted that the mother was “unfit” to make decisions as to the children’s best interests. The mother moved to strike that amendment. The trial court did not rule on the motion to strike.

. The legislative history of the 2011 amendments shows that both Act No. 2011-539 and Act No. 2011-562 were signed into law on June 9, 2011, the day be&re, not the day after, the issuance of our supreme court’s decision in Ex parte E.R.G., as was erroneously asserted by the grandparents in Tripp v. Owens, 150 So.3d 208, 209 (Ala.Civ.App.2014).

. Our supreme court did not consider the 2011 amendments in Ex parte E.R.G., and, until this appeal, no appellate court has explored the constitutionality of the GVA, as amended in 2011. See Tripp v. Owens, 150 So.3d 208 (Ala.Civ.App.2014) (declining to consider the constitutionality of the GVA, as amended in 2011, because the issue was not properly raised in the trial court); J.P. v. L.P., 194 So.3d 945 (Ala.Civ.App.2015) (refusing to address constitutionality of the GVA when appellant did not raise issue in lower court); see also J.B. v. J.M., 175 So.3d 170 (Ala.Civ.App.2015) (presuming the validity of the GVA, as amended in 2011, in the absence of any constitutional challenge to the act).

. Section 30-3-4.1(b)(3) and (d)(6) ostensibly incorporate that standard.

. This court also recognizes that a-juvenile court can award grandparent visitation under Ala.Code 1975, § 12-15-314(a)(4) ("If a child is found to be dependent, the juvenile court may ... [mjake any ... order as the juvenile court in its discretion shall deem to be for the welfare and best interests of the child.”). See L.T. v. J.D., 109 So.3d 652 (Ala.Civ.App.2012).