DONALDSON, Judge.
Stuart Vest (“the husband”) appeals from the divorce judgment of the Limestone Circuit Court (“the trial court”) granting the husband and Alicia Vest (“the wife”) joint legal custody of K.V. (“the child”), granting the wife sole physical custody of the child, ordering the husband to pay child support, and granting the husband visitation with the child. The cost of child care was included in the child-support calculation, but there is no evidence in the record indicating that child-care costs will be incurred. We therefore reverse the portion of the judgment ordering the husband to pay child support and remand the cause to the trial court for it to make a new child-support determination. We affirm the other aspects of the judgment.

Facts and Procedural History

The husband and the wife were married in February 2007, and the child was born on August 28, 2010. On September 9, 2014, the husband filed a complaint for a divorce in the trial court, requesting sole physical custody of the child and child support. The wife filed a counterclaim for a divorce in which she requested sole physical custody of the child and child support.
On November 25, 2014, the husband filed a motion for an order requiring each party to take a drug-screening test. After a hearing, the trial court entered an order on December 9, 2014, granting the husband’s motion and ordering each party to submit to a drug-screening test. The results of each party’s test were negative for drugs that had not been prescribed to that party.
On February 3, 2015, the trial court conducted a pendente lite hearing in which only the husband and the wife testified. *555 Their testimony reflected the following facts. The husband worked as an electrician and foreman. The wife worked in an automobile-manufacturing plant. She alternated between two weeks of day shifts and two weeks of night shifts. The parties separated in September 2014. Afterward, the husband continued living in the marital residence in Athens, and the wife lived with her parents in the City of Madison. The parties had informally agreed that the wife would care for the child during the two-week period when she worked day shifts and that the husband would care for the child when the wife worked night shifts. On February 20, 2015, the trial court entered a pendente lite order that continued the parties’ informal custodial arrangement.
On August 5, 2015, the wife filed a motion to enroll the child in a Madison County school to attend kindergarten. The husband filed an objection, asserting that he had enrolled the child in a school in Athens.
On August 19, 2015, the trial court conducted a trial. At the trial, the husband reiterated his request for sole physical custody of the child and for child support. In the event that he was granted sole physical custody, the husband requested permission to relocate to Eva, Alabama, where his parents lived and where he intended to move. The husband presented testimony from the child’s former day-care teacher, his boss, the pastor from his church, several friends, his stepfather, and his mother. Their testimony showed that the husband had a loving relationship with the child, that the husband and the child participated in activities together such as fishing, that the child was respectful of the husband, and that the husband took care of the child. The husband’s mother testified that, in the past year, the husband had “stepped up” as a father.
The wife and the husband lived with the wife’s parents before they purchased their marital residence. The wife’s mother tesr tified that she and her husband helped the wife care for the child. The neighbor of the wife’s parents (“the neighbor”) testified that she often participated in the family gatherings at the wife’s parents’ house. The wife’s mother and the neighbor testified that the wife had a loving relationship with the child, that the wife and the child participated in activities together, and that the wife took care of the child. They and the wife testified that, before the wife and the husband separated, the wife was the primary caretaker of the child. The wife’s mother testified that, on one or two occasions, she had had to wake up the wife to take care of the child. The wife, the wife’s mother, and the neighbor all testified that, during the marriage, the husband often had pursued hobbies such as hunting, fishing, or softball so that he was not around his family during many weekends and some holidays. The wife testified that she had agreed not to keep the husband from his hobbies, but, in her opinion, he pursued them excessively.
The husband testified regarding a few occasions when, he alleged, the wife had been drunk and regarding another occasion during which, he said, she had smoked synthetic marijuana. The husband testified that he drank alcohol on occasion and that he had smoked marijuana in high school. The husband testified that he had been taking pain medication for arthritis in his back. The wife testified to having back problems also and to having taken the husband’s pain medication on occasion. The wife testified that the husband was addicted to his pain medication, that he often ran out of the medication before the next prescription was set to be filled, and that he purchased pain medication to use in addition to the pain medication he was *556 prescribed. The neighbor testified that the husband had asked to purchase some of her pain medication but that she had refused each time. The husband denied any addiction to his pain medication. He submitted copies of prescriptions dated March, June, and July 2015, each for 90 pain-medication pills, that, he testified, he did not fill. He testified that, on average, he took pain medication four days a week.
The husband testified that, before the marriage, he had served in the Army and Army Reserves for 13 years and that his service included tours in Iraq. The husband’s boss testified that he had not seen signs of depression or violence from the husband. Although the husband confirmed in his testimony at the pendente lite hearing that he had killed women and children in the line of duty, at trial he testified only to having killed women, not children, while in combat in Iraq. He denied that his military experience had had an effect on his emotional well-being, and he testified that he had never been diagnosed with post-traumatic sti’ess disorder. The husband testified that he would be willing to seek counseling as a condition to receiving sole physical custody of the child.
The wife testified that the husband was often depressed and quiet. She testified that he would have flashbacks at night and that she had to be very careful when waking him up while he was having a flashback. She testified that, on one occasion, the husband had kicked her and broken her ribs while she was trying to wake him up. She testified to blocking certain television channels because some shows would cause the husband to have flashbacks. She testified to asking the husband several times to seek counseling, but, she stated, he refused to do so. The husband testified that, when the child was in his custody, he and the child sometimes shared the same bed.
The wife testified to an occasion when the husband became upset and punched a hole in a wall in their house because she had had a drink with a coworker after work. The wife’s mother and the neighbor both testified that, when the wife and the husband were living with the wife’s parents, the husband had beaten the wife’s dog with his fists for 10-15 minutes because the dog had left the yard through an open gate. The wife and the husband testified to a time when the child had bruises on his backside that included bruises above the belt line. The wife testified that, while the child was in the husband’s custody, the husband had informed her that a teacher at the child’s day-care center had paddled the child. The wife called the Department of Human Resources (“DHR”), but DHR did not find an indication of abuse in its investigation of the day-care center.
The child began attending kindergarten full time a week before the trial. The parties had disagreed on the school that the child would attend. The wife initially enrolled the child in the Madison County school system. The husband canceled the child’s registration as a student in the Madison County school system and instead enrolled the child in a school in Limestone County. The parties took turns canceling the child’s registration and enrolling the child in the school system of their choice. The husband testified that, if granted sole custody of the child, he would have to transfer the child to another school system when he moved to Eva. He testified that the transfer would be a negative experience for the child, acknowledging that there would be no transfer if the mother had sole physical custody and the child attended a Madison County school.
The husband testified that, since the child began school, his work schedule enabled him to pick up the child after school *557 and that the child had not attended day care since starting school full time. The wife’s mother testified that she took care of the child when the wife was unavailable during her custodial periods. On the day of the trial, the mother submitted a CS-41 Child-Support-Obligation Income Statement/Affidavit form (“CS-41 form”) that stated “none” for child-care costs related to employment. The husband testified that at the pendente lite hearing he had submitted a CS^l form stating $100 as the amount of child-care costs related to employment but that the CS-41 form he submitted on the day of the trial contained a zero amount for child-care costs. The husband’s CS-41 forms are not available in the record.
On August 27, 2015, the trial court entered a judgment divorcing the parties. In the judgment, the parties were granted joint legal custody, the wife was granted sole physical custody, the husband was granted standard visitation, and the husband was ordered to pay child support. On September 14, 2015, the husband filed a motion to alter, amend, or vacate the judgment, arguing that the evidence established that he should have been granted sole physical custody, that the trial court had failed to consider a joint-physical-custody arrangement, that the child-support calculation was not supported by the evidence, and that the trial court had failed to provide for the manner and place of exchanging the child in connection with the husband’s visitation. After conducting a hearing, the trial court denied the husband’s postjudgment motion on October 8, 2015. The husband filed a notice of appeal to this court on October 29, 2015.

Discussion

The husband argues that granting sole physical custody of the child to him, instead of to the wife, was in the best interests of the child. The trial court made the initial determination of custody of the child after receiving conflicting ore tenus testimony from the parties. We apply the following standard of review:
“ ‘In an action between parents seeking an initial award of custody, the parties stand on equal footing and no presumption inures to either parent. Hall v. Hall, 571 So.2d 1176 (Ala.Civ.App. 1990). The trial court’s overriding consideration is the children’s best interests and welfare. Santmier v. Santmier, 494 So.2d 95 (Ala.Civ.App.1986). The factors that enter into the court’s custody determination include the child’s age and sex and each parent’s ability to provide for the child’s educational, material, moral, and social needs. Tims v. Tims, 519 So.2d 558 (Ala.Civ.App.1987). Likewise, it is proper for the court to consider the “characteristics of those seeking custody, including age, character, stability, mental and physical health ... [and] the interpersonal relationship between each child and each parent.” Ex parte Devine, 398 So.2d 686, 696-97 (Ala. 1981).’”
Hennis v. Hennis, 977 So.2d 520, 527 (Ala.Civ.App.2007) (quoting Graham v. Graham, 640 So.2d 963, 964 (Ala.Civ.App.1994)).
“The presumption of correctness in a trial court’s ruling where evidence is presented ore tenus is especially applicable where, as here, the evidence is conflicting. Ex parte P.G.B., [600 So.2d 259 (Ala.1992) ]. ‘The reason for the ore ten-us rule is well-established, i.e., that the trial court had the opportunity to observe witnesses as they testified, to judge their credibility and demeanor, and to observe what this court cannot perceive from a written record.’ Dobbins v. Dobbins, 602 So.2d 900, 901 (Ala. Civ.App.1992). The perception of an attentive trial judge is especially critical in *558 a child custody case. This court is not permitted to substitute its judgment on appeal for that of the trial court if, from the evidence, there is any reasonable inference that the trial court’s decision is correct. Jones v. Wright, 555 So.2d 1127 (Ala.Civ.App.1989).”
G.T.R. v. U.D.R., 632 So.2d 495, 497 (Ala.Civ.App.1993).
Both parties provided testimonial evidence showing that they both are loving parents, participate in activities with the child, and are capable of caring for the child. The wife presented evidence indicating that the husband suffers psychological effects from his military service, which resulted in an injury to her on one occasion. There is also evidence from which the trial court could have found violent acts by the husband and a possible addiction to pain medication. Despite the husband’s characterizations of the wife in his briefs on appeal, the evidence in the record did not compel the trial court to find that the wife is incapable of caring for the child.[1] The wife and other witnesses testified that she was the primary caretaker of the child during the marriage. See Tims v. Tims, 519 So.2d 558 (Ala.Civ.App.1987) (affirming custody determination based largely on a parent’s role as the primary caretaker); Smith v. Smith, 836 So.2d 893, 897 (Ala.Civ.App.2002). Although the husband’s work schedule perhaps allows him to spend more time with the child during a workday than does the wife’s schedule, the evidence shows that the wife’s parents are available to help her care for the child when she is working. In addition, the husband admitted in his testimony that the child would not have to transfer to a new school if the wife was granted sole physical custody and the child enrolled in a Madison County school. We conclude that “the trial court properly considered the health, safety, and well-being of the child” in granting sole physical custody to the wife. Smither v. Smither, 579 So.2d 1371, 1372 (Ala.Civ.App.1991).
The husband argues that granting the wife sole custody of the child, considering her work schedule, is tantamount to an impermissible grant of grandparent visitation to the wife’s parents. In support of this argument, the husband cites Weldon v. Ballow, 200 So.3d 654 (Ala.Civ.App.2015), a case addressing the constitutionality of a statute not at issue in this case. We note that the husband failed to raise this argument to the trial court. “This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court.” Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992). As a result, no reversible error is established on this issue.
The husband next argues that the trial court was required by § 30-3-152, Ala.Code 1975, to presume that joint physical custody was in the best interests of the child and, accordingly, to make specific findings as to why joint physical custody was not granted. Section 30-3-152(c) provides: “If both parents request joint custody, the presumption is that joint custody is in the best interest of the child. Joint custody shall be granted in the final *559 order of the court unless the court makes specific findings as to why joint custody is not granted.” Each parent in this case requested sole physical custody of the child. Without a request by both parents for joint custody, “there is no presumption that joint custody is in the best interest of the children,” DuBois v. DuBois, 714 So.2d 308, 309 (Ala.Civ.App.1998), and the trial court is not required to make findings explaining why it did not grant joint physical custody. Ex parte Byars, 794 So.2d 345, 349 (Ala.2001); Tompkins v. Tompkins, 843 So.2d 759, 764 (Ala.Civ.App.2002).
The husband asserts that the trial court was required to presume that a grant of joint physical custody was in the best interests of the child because, he asserts, the evidence favored joint physical custody, the pendente lite order provided for a shared-physical-custody arrangement, and the mutual assertions of counsel at the postjudgment hearing reflected that no evidence had been submitted to show that problems had occurred while the pendente lite order was^ in effect. None of those reasons is a basis for triggering such a presumption. Both parents sought sole physical custody of the child, and the husband requested joint physical custody only after the judgment had been entered. In the absence of a request by both parents for joint physical custody, the trial court was not required to presume that joint physical custody was in the best interests of the child or to make findings as to why joint physical custody was not granted.
The husband argues that the evidence introduced at the pendente lite hearing was almost identical to the evidence produced at the trial and that, therefore, the trial court should have granted the same shared-physical-custody arrangement as had been ordered in the pendente lite order. “We note, however, that a trial court is not bound by a penden-te lite custody arrangement, which is merely temporary in nature and which, in this case, was not based on a consideration of the evidence fully presented at trial,” Anderson v. Anderson, 199 So.3d 66, 68 (Ala.Civ.App.2015)(citing Ex parte Bland, 796 So.2d 340, 343-44 (Ala.2000)). Testimony elicited only during the trial included the neighbor’s testimony regarding the husband’s attempts to purchase pain medication from her and regarding the details of his beating of the family’s dog. The testimony from witnesses not present at the pendente lite hearing could have helped the trial court to assess credibility, weigh evidence, and formulate factual determinations. Although the trial court received testimony on many of the same issues during both the pendente lite hearing and the trial, we cannot say that the evidence was, or was nearly, identical. The reasons for affirming the grant of sole physical custody to the wife also apply to this issue. In addition, the parties exhibited conflict over enrolling the child in school. Therefore, we conclude that the portion of the judgment addressing custody is not reversible on this basis.
Regarding his visitation with the child, the husband argues that the provision in the judgment establishing the place for exchanging the child is not supported by the evidence and exceeds the trial court’s discretion. “[D]ivorce judgments should ‘be interpreted or construed like other written instruments.’ ” Cockrell v. Cockrell, 40 So.3d 712, 715 (Ala.Civ.App.2009) (quoting Sartin v. Sartin, 678 So.2d 1181, 1183 (Ala.Civ.App.1996)). “ ‘[I]f the terms of a judgment are not ambiguous, they should be given their usual and ordinary meaning.’” Ratliff v. Ratliff, 5 So.3d 570, 586 (Ala.Civ.App.2008) (quoting Moore v. Graham, 590 So.2d 293, 295 (Ala.Civ.App.1991)). The provision in the judgment concerning the exchange of the child for visitation states:
*560 “For so long as the children [sic] reside in Limestone County, Alabama, all visitation will be accomplished by the noncustodial parent picking up and re-delivering the minor children [sic] to the residence of the custodial parent, or such other reasonable place as that parent may indicate, at the times provided for each period of visitation.”
The husband asserts that it is not in the best interests of the child to require him to travel to the wife’s residence in the City of Madison for each visitation with the child. However, the provision does not impose any requirements regarding the exchange of the child because, as the provision clearly states, the requirements are subject to the condition that the child reside in Limestone County. The judgment granted the wife sole physical custody of the child, and she resides in the City of Madison, which is in Madison County. As a result, the provision is currently inapplicable. The husband does not contend that a provision regarding visitation exchanges was needed to settle a dispute between the parties. To the contrary, the husband asserts that the parties communicated and worked together effectively regarding custodial matters. The husband therefore fails to establish a ground for reversal on this issue.
The husband also argues that the inclusion of $100 as work-related child-care costs in the child-support calculation was not supported by the evidence. The parties do not dispute that the child was no longer attending the day-care center he had attended before starting school full time. The wife’s CS-41 form, submitted at the time of trial, indicates no child-care expenses, and she offered no evidence regarding child-care expenses. The husband fails to discuss his testimony regarding the CS-41 form that listed $100 for child-care costs, which was submitted at the penden-te lite hearing. That amount is the same amount the trial court used in its child-support calculation. In Evans v. Evans, 978 So.2d 42 (Ala.Civ.App.2007), we held that child-care costs were improperly included in the child-support calculation when evidence presented by the custodial parent did not show that child-care costs would be incurred and only the noncustodial parent had listed an amount for childcare costs in his CS-41 form. We therefore conclude that insufficient evidence supports the inclusion of child-care costs in the trial court’s calculation of child support.
For the foregoing reasons, we reverse the portion of the judgment determining the amount of child support granted to the wife and remand the cause to the trial court for it to recalculate child support in a manner consistent with this opinion. We affirm all other aspects of the judgment.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

. During the trial, the wife testified that she could not remember if she had been in Nashville, Tennessee, on February 8, 2015, offhandedly commenting that she did not know what she did the day before. She also testified that she did not know where the City of Brentwood was. The husband testified to a few occasions when, he said, the wife used alcohol or drugs. The evidence in the record does not show that the trial court was compelled to find that the wife had a problem with alcohol or drugs or that she had a severe memory problem as a result of her use of alcohol or drugs.